Submitted on record and briefs September 12, reversed and remanded
October 23, 1996

## William MOORE
### and Marilyn Moore,
*Respondents,*

*v.*

## COOS COUNTY,
### Frank Black and Ramona Black,
*Petitioners.*

(LUBA No. 95-149; CA A93973)

925 P2d 927

David R. Ris, County Counsel, filed the brief for petitioner Coos County.

Jerry O. Lesan and Lesan & Finneran filed the brief for petitioners Frank Black and Ramona Black.

No appearance for respondents.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Petitioners Black (petitioners) and Coos County seek review of LUBA's remand of the county's approval of petitioners' application for a nonfarm dwelling in an exclusive farm use (EFU) zone. We reverse.

The county based its approval on two alternative grounds: That the dwelling qualified as a nonconforming use under the applicable provision of the county zoning ordinance, and that it would be situated on a one-acre parcel that is "generally unsuitable for the production of farm crops and livestock." The nonconforming use determination was premised on the fact that, beginning before the time of restrictive zoning and continuing until 1992, at the latest, petitioners' predecessors had maintained a mobile home or trailer on the property. The application was filed in 1994.

Although there was abundant evidence that the parcel itself was unsuitable for farm use, respondents Moore argued to the county that they were "willing" to use petitioners' property as an adjunct of their neighboring boarding stable, where they board and pasture horses and provide for recreational riding. Hence, they reasoned, the property could be used "for the production of * * * livestock," within the meaning of ORS 215.284(2) and OAR 660-33-030(4)(c), and therefore was not "generally unsuitable." The county disagreed, *inter alia*, with respondents' understanding that their boarding and related operations constituted the *production* of horses.

Respondents appealed to LUBA, which disagreed with both of the county's bases for allowing the dwelling. Petitioners and the county both contend to us that LUBA erred in its disposition of the nonconforming use issue, and petitioners assert that LUBA was also wrong on the general unsuitability question. Because we agree with the latter argument, we do not reach the first.[1]

---

[1] Our disposition is a remand to LUBA rather than one that concludes the case. In the event that subsequent review by this court takes place, petitioners and the county are not foreclosed from again raising the nonconforming use issue. *See Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992).

ORS 215.284(2) provides that, in the area of the state where Coos County is located,

"a single-family residential dwelling not provided in conjunction with farm use may be established, subject to approval of the governing body or its designate, in any area zoned for exclusive farm use upon a finding that:

"(a) The dwelling or activities associated with the dwelling will not force a significant change in or significantly increase the cost of accepted farming or forest practices on nearby lands devoted to farm or forest use;

"(b) The dwelling is situated upon a lot or parcel or portion of a lot or parcel that is generally unsuitable land for the production of farm crops and livestock or merchantable tree species, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract. A lot or parcel or portion of a lot or parcel shall not be considered unsuitable solely because of size or location if it can reasonably be put to farm or forest use in conjunction with other lands[.]"[2]

OAR 660-33-030(4)(c)(D) amplifies the statutory standard, *inter alia*, by providing that "a lot or parcel shall not be considered unsuitable solely because of size or location if it can reasonably be put to farm or forest use in conjunction with other land." The rule provides further:

"If a lot or parcel can be sold, leased, rented or otherwise managed as a part of a commercial farm or ranch, it is not 'generally unsuitable.' "

The decisive question is whether the potential use of petitioners' property in conjunction with respondents' boarding stable and related operations makes it suitable for the "production of * * * livestock," as that phrase is used in ORS 215.284(2)(b). For that question to be answered affirmatively, respondents' operations themselves must consist of or include the "production of livestock." The phrase is not defined by statute. Textually, the plain, natural and ordinary meaning of the word "production," as reflected by the most

---

[2] The provisions relating to nonfarm dwellings were recodified from ORS 215.283 to ORS 215.284 in 1993 but remained essentially the same in substance.

apposite of the definitions in *Webster's Third New International Dictionary*, is "the act or process of producing, bringing forth or making." As it is used here, the word does not refer to *all* kinds of involvement with the product, but, rather, connotes an activity that causes or induces the existence of the product. Respondents' equine operations are not of that kind.

Moreover, ORS 215.284 refers to "production of farm crops" in the same phrase in which it refers to the production of livestock. It is virtually impossible to conceive of any intended meaning of "production" here in connection with crops except an activity that fosters their existence. The word "production" necessarily means the same thing with respect to both of its referents in the same phrase.

The statutory context supports the view that the word "production" in ORS 215.284(2)(b) was meant to apply in that literal and limited sense, because the legislature has demonstrated in other statutes pertaining to agriculture that, when it chooses to describe broader operations, it uses broader language. For example, ORS 215.203(2)(a) includes in the definition of "farm use" the "feeding, breeding, management and sale of, or the produce of, livestock." Moreover, unlike ORS 215.284, ORS 215.203 includes in its scope operations of exactly the kind in which respondents are engaged. It states:

" 'Farm use' also includes the current employment of land for the primary purpose of obtaining a profit in money by stabling or training equines including but not limited to providing riding lessons, training clinics and schooling shows."

The latter language was added to ORS 215.203(2)(a) by 1993 and 1995 amendments that were apparently designed to legislatively modify or overrule the Supreme Court's decision in *Capsey v. Dept. of Rev.*, 294 Or 455, 657 P2d 680 (1983). No corresponding amendments were made to ORS 215.284 (or the parts of ORS 215.283 where it was formerly codified). We conclude, on the basis of the text and context of the statute, that the horse business that respondents

operate does not constitute the "production of * * * livestock."³

LUBA reasoned, however:

"[T]he county erred when it concluded that consideration of the potential use of the subject property for grazing horses in conjunction with the adjacent equine operation is not required because that operation does not produce farm crops or livestock. An operation that requires land for grazing horses employs that land 'for the production of * * * livestock' as that phrase is used in ORS 215.284(2)(b). Because [respondents] raised below their willingness to use the property for grazing horses in conjunction with their equine operation, and because such activities are an aspect of the production of livestock, the county must evaluate the possible use of the subject property for grazing horses applying the general unsuitability test."

We disagree with that reasoning. "Grazing" is a component of virtually all operations involving live horses and not just of production operations. Where no other indices of production are present, grazing alone does not demonstrate or establish the existence of a livestock production operation. For the reasons we have noted, no other indices of production are present in the boarding stable operation to which respondents propose to add petitioners' property as a grazing site. We hold that the potential use of petitioners' property that respondents propose is not for livestock production and that the county correctly concluded that the use therefore does not enter the general unsuitability calculus under ORS 215.284. Because LUBA held otherwise, it did not reach respondents' related substantial evidence argument. We remand for it to do so.

Reversed and remanded.

---

³ The county concluded that ORS 215.203 has no direct application to the permissibility of the *nonfarm* dwelling and that ORS 215.284 is the pertinent statute. We agree.