Submitted October 6, reversed and remanded December 29, 2022

Joseph SCHAEFER,
*Petitioner,*

*v.*

MARION COUNTY
and TLM Holdings, LLC,
*Respondents.*

Land Use Board of Appeals
2020108; A179153

523 P3d 1142

TLM Holdings, LLC applied for, and Marion County approved, a comprehensive plan map amendment, a zoning map amendment, exceptions to Statewide Land Use Planning Goals 3 and 14, and a conditional use permit, all to allow industrial and commercial development on a 16.54-acre parcel adjacent to the Aurora State Airport. In the proceeding at issue on judicial review, LUBA considered the county's conclusion that, if goal exceptions were required, they were justified by the presence of the airport. LUBA rejected petitioner's challenge to the county's reasoning regarding the Goal 3 exception raised in his first assignment of error before LUBA. *Held*: OAR 660-012-0060(5) prohibited the county from basing the Goal 3 exception, which was taken under OAR 660-004-0022, on the presence of the airport. Because the county's reasoning was contrary to OAR 660-012-0060(5), LUBA erred in rejecting petitioner's first assignment of error before LUBA.

Reversed and remanded.

Joseph Schaefer filed the brief *pro se*.

Alan M. Sorem and Saalfeld Griggs PC filed the brief for respondent TLM Holdings, LLC.

Scott A. Norris filed the brief for respondent Marion County.

Andrew Mulkey filed the brief *amicus curiae* for 1000 Friends of Oregon.

David James Robinson filed the brief *amicus curiae* for City of Aurora.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JAMES, P. J.

Reversed and remanded.

**JAMES, P. J.**

This is the second time we have addressed this land-use dispute involving TLM Holdings, LLC's application to Marion County for a comprehensive plan map amendment, a zoning map amendment, exceptions to Statewide Land Use Planning Goals 3 and 14, and a conditional use permit, all to allow industrial and commercial development on a 16.54-acre parcel adjacent to the Aurora State Airport. In our first opinion, we agreed with petitioner that the Land Use Board of Appeals (LUBA) erred in affirming the county's determination that the applied-for development constituted "expansion * * * of [a] public use airport[]" and thus was "consistent with Goals 3, 4, 11, and 14" as a matter of law. OAR 660-012-0065(3)(n); *Schaefer v. Marion County*, 318 Or App 617, 620, 509 P3d 718 (2022). On remand, LUBA considered the county's alternative reasoning in the same county order—specifically, the county's conclusion that, if goal exceptions were required, they were justified by the presence of the airport—and rejected petitioner's challenge to the county's reasoning regarding the Goal 3 exception raised in his first assignment of error before LUBA.[1]

Petitioner again seeks review, and, again, he is joined by *amici* 1000 Friends of Oregon and the City of Aurora. In his first assignment of error, he contends that LUBA erred in concluding that the county could base its goal exceptions on the fact that the proposed uses need to be sited adjacent to an airport. In his view, that justification for an exception is prohibited by OAR 660-012-0060(5), which provides, "The presence of a transportation facility or improvement shall not be a basis for an exception to allow residential, commercial, institutional, or industrial development on rural lands under this division or OAR 660-004-0022 and 660-004-0028." As explained below, we agree with petitioner that OAR 660-012-0060(5) prohibited the county from basing the Goal 3 exception on the presence of the airport. We also agree with petitioner and LUBA that the county based the exception on the presence of the airport. Thus, we reverse and remand.

---

[1] LUBA also addressed petitioner's other assignments of error, sustaining some assignments and subassignments and denying others. Those issues do not affect our analysis and, accordingly, we do not describe them.

In his second assignment of error on judicial review, petitioner contends that the county erred in approving the applications without also taking an exception to Goal 11. In light of uncertainty about what further proceedings in this case will bring given our holding in this opinion, we decline to address that assignment of error at this point. *See, e.g., Moore v. Coos County*, 144 Or App 195, 197 & n 1, 925 P2d 927 (1996) (declining to address a second assignment of error and noting that, "[i]n the event that subsequent review by this court takes place, petitioners and the county are not foreclosed from again raising" the issue that the court did not address (citing *Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992)). Schaefer is not foreclosed from raising that issue again in a subsequent review proceeding.

## I.   BACKGROUND

The background facts are set out in our previous opinion. *Schaefer*, 318 Or App at 620-22. On remand after our decision, LUBA decided the assignments of error that it had previously declined to address, including assignments related to the county's determinations that the applied-for development satisfied the requirements for exceptions to Goal 3, which governs agricultural lands, and Goal 14, which governs urbanization. Many of the county's findings in support of the exceptions are not relevant to the issue before us; we summarize only the findings and conclusions that are relevant to our analysis.

For its Goal 3 exception, the county relied on OAR 660-004-0022, which governs goal exceptions for uses on resource land that are based on justifying reasons. ORS 197.732(2)(c);[2] Statewide Planning Goal 2: Part II (Exceptions);

---

[2] ORS 197.732(2)(c) provides as follows:

"A local government may adopt an exception to a goal if:

"* * * * *

"(c) The following standards are met:

"(A) Reasons justify why the state policy embodied in the applicable goals should not apply;

"(B) Areas that do not require a new exception cannot reasonably accommodate the use;

"(C) The long term environmental, economic, social and energy consequences resulting from the use at the proposed site with measures designed

OAR 660-004-0020; *see also 1000 Friends of Oregon v. Yamhill County*, 203 Or App 323, 328, 126 P3d 684 (2005) ("When, as here, the exception sought involves a use on resource land not allowed under the goals, OAR 660-004-0022 describes types of reasons that may be used."). Those exceptions are known as reasons exceptions. *1000 Friends of Oregon v. Jackson County*, 292 Or App 173, 177, 423 P3d 793 (2018), *rev dismissed*, 365 Or 657 (2019). The county found that reasons justified an exception for the applied-for commercial uses under OAR 660-004-0022(1) and that reasons justified an exception for the applied-for industrial uses under OAR 660-004-0022(3).

We begin by briefly explaining the county's reasoning as to the applied-for commercial uses. OAR 660-004-0022(1) addresses reasons for uses not otherwise specifically provided for in other rules. The reasons for exceptions for such uses

"include but are not limited to the following: There is a demonstrated need for the proposed use or activity, based on one or more of the requirements of Goals 3 to 19; and * * *:

"* * * * *

"(b)   The proposed use or activity has special features or qualities that necessitate its location on or near the proposed exception site."

The county found that there was a demonstrated need for the applied-for uses under Goals 9 and 12. Then, beginning from the premise that "[a]irport-related uses, generally, require locations proximate to airports," the county found that the proposed commercial uses have "special features or qualities that necessitate" their location adjacent to the airport because they rely on access to the airport. OAR 660-004-0022(1)(b).

We turn to the county's reasoning as to the applied-for industrial uses. OAR 660-004-0022(3) provides reasons

---

to reduce adverse impacts are not significantly more adverse than would typically result from the same proposal being located in areas requiring a goal exception other than the proposed site; and

"(D)   The proposed uses are compatible with other adjacent uses or will be so rendered through measures designed to reduce adverse impacts."

that can justify "the siting of industrial development on resource land outside an urban growth boundary." Under that rule,

"appropriate reasons and facts may include, but are not limited to, the following:

"(a)  The use is significantly dependent upon a unique resource located on agricultural or forest land. Examples of such resources and resource sites include geothermal wells, mineral or aggregate deposits, water reservoirs, natural features, or river or ocean ports;

"(b)  The use cannot be located inside an urban growth boundary due to impacts that are hazardous or incompatible in densely populated areas; or

"(c)  The use would have a significant comparative advantage due to its location (e.g., near existing industrial activity, an energy facility, or products available from other rural activities), which would benefit the county economy and cause only minimal loss of productive resource lands. Reasons for such a decision should include a discussion of the lost resource productivity and values in relation to the county's gain from the industrial use, and the specific transportation and resource advantages that support the decision."

Again, the county began from the premise that the "[p]roposed airport-related uses, including industrial uses, generally require location proximate to an airport." The county reasoned that the applied-for industrial uses meet the requirements of both OAR 660-004-0022(3)(a)—they are significantly dependent on a unique resource on agricultural land, *i.e.*, the airport—and OAR 660-004-0022(3)(c)—the uses would have a significant comparative advantage due to their location near the airport. The county explained:

"The design, repair, and manufacturing of aircraft, parts, and other aerospace and aerodynamic uses described above, all need to occur as part of an airport cluster and require access to airfields for testing. If these uses were located outside of an airport, they would be severely restricted from accessing their customers' primary use of transportation—air service. Therefore, the evidence in the record supports both the conclusion these uses depend on the Aurora Airport and they would have a significant comparative advantage due to [their] location ([*i.e.*], near the Aurora Airport)."

Before the county, and again before LUBA, petitioner contended that the county's reasoning was impermissible under OAR 660-012-0060(5), part of the transportation planning rule. That provision states, "The presence of a transportation facility or improvement shall not be a basis for an exception to allow residential, commercial, institutional, or industrial development on rural lands under this division or OAR 660-004-0022 and 660-004-0028." A "transportation facility" is "any physical facility that moves or assist[s] in the movement of people or goods including facilities identified in OAR 660-012-0020 but excluding electricity, sewage, and water systems." OAR 660-012-0005(46). OAR 660-012-0020(2)(e) identifies "public use airports" as transportation facilities.[3]

Petitioner contended that, by its terms, OAR 660-012-0060(5) prohibits the county's reasoning, because the airport is a transportation facility and the presence of the airport was the sole basis for the county's determination that an exception to Goal 3 was justified under OAR 660-004-0022 for the applied-for commercial and industrial development.

LUBA agreed with petitioner that the airport is a transportation facility and that the county's reasoning was based on its presence. However, LUBA held that petitioner's proffered interpretation of OAR 660-012-0060(5)—his view that "[t]he presence of a transportation facility or improvement shall not be a basis for an exception to allow residential, commercial, institutional, or industrial development on rural lands under *** OAR 660-004-0022" means that the presence of the airport, concededly a transportation facility, cannot be the basis for an exception for commercial and industrial development on rural lands under OAR 660-004-0022—was precluded by LUBA's previous interpretation of OAR 660-012-0060(5) in *Columbia Riverkeeper v. Columbia County*, 78 Or LUBA 547, 577-81 (2018),

---

[3] OAR 660-012-0020 provides requirements for transportation system plans, one of the elements of which is "[a]n air, rail, water and pipeline transportation plan which identifies where public use airports, mainline and branchline railroads and railroad facilities, port facilities, and major regional pipelines and terminals are located or planned within the planning area." OAR 660-012-0020 (2)(e).

*aff'd*, 297 Or App 628, 443 P3d 1184, *rev den*, 365 Or 721 (2019).[4]

As explained above, OAR 660-004-0022(1) and (3) both set out specific reasons that can justify a reasons exception and also state that the reasons on which a local government may rely "include but are not limited to" those specifically stated in the rule. OAR 660-004-0022(1), (3). Thus, the rule divides the universe of potentially permissible reasons that justify exceptions into two categories: specified reasons, each of which is listed in its own subsection of the rule, and unspecified reasons, which are addressed only by the catchall "but are not limited to" language of the rule. In this case, LUBA relied on its holding in *Columbia Riverkeeper* to conclude that OAR 660-012-0060(5) does not prohibit exceptions based on the presence of a transportation facility for the specified reasons; it prohibits only exceptions based on the presence of a transportation facility for unspecified reasons. LUBA stated, "OAR 660-012-0060(5) is intended to prohibit only an exception based on the existence of a transportation facility and not otherwise appropriate for an exception for reasons set out in OAR 660-004-0022."

Thus, as a textual matter, LUBA concluded that, when OAR 660-012-0060(5) prohibits the presence of a transportation facility as the basis for "an exception for residential, commercial, institutional, or industrial development on rural lands *under \* \* \* OAR 660-004-0022*" (emphasis added), it means an exception under OAR 660-004-0022 that is based on the catchall language, not an exception under OAR 660-004-0022 that is based on any of the reasons specified in the rule. Here, LUBA explained, the county had determined that the applied-for development met the requirements of OAR 660-004-0022(1)(b)—it "has special features or qualities that necessitate its location on or near the proposed exception site" (because it is airport-related development that must be sited near an airport)—

---

[4] Although we affirmed LUBA's opinion in *Columbia Riverkeeper*, LUBA's interpretation of OAR 660-012-0060(5) was not at issue on review, and we do not understand our previous opinion to have created any precedent on its meaning. Later in this opinion, we summarize and discuss LUBA's analysis of OAR 660-012-0060(5) in that case; the purpose of that discussion is to provide context for LUBA's reasoning and our analysis in this case.

and, accordingly, it was "appropriate for an exception for reasons set out in OAR 660-004-0022." Thus, it did not rely on the catchall language of OAR 660-004-0022. Consequently, under LUBA's interpretation of OAR 660-012-0060(5), an exception for the applied-for development was not prohibited.[5]

LUBA also reasoned that OAR 660-012-0060(5) could not be interpreted, consistently with its text, to apply to both specified and unspecified reasons under OAR 660-004-0022—as petitioner asserted it should be—because, if petitioner's interpretation of OAR 660-012-0060(5) were correct, no reasons exceptions under OAR 660-004-0022 would be permitted for expansions of public use airports on rural land. LUBA reasoned that an exception for the expansion of a public use airport is necessarily based on the presence of the existing airport, a transportation facility, so, under petitioner's interpretation, reasons exceptions would not be allowed for public use airport expansions. That would be problematic, LUBA noted, because goal exceptions are required for certain expansions of public use airports—expansions that permit service to a larger class of airplanes. *See* OAR 660-012-0065(3)(n) (no exceptions are required for "[e]xpansions or alterations of public use airports that do not permit service to a larger class of airplanes"). Thus, LUBA concluded, "Consistent with our reasoning and conclusion in [*Columbia Riverkeeper*], we conclude that OAR 660-012-0060(5) does not prohibit a reasons exception for airport-related uses that need to be located proximate to the Airport for purposes allowed under OAR 660-004-0022(1)(b)."

## II.   ARGUMENTS AND ANALYSIS

Petitioner seeks judicial review, again pointing to the plain text of OAR 660-012-0060(5) and contending that the provision applies here and unambiguously prohibits the county's reasoning in support of the exception. He

---

[5] As described above, the county found that the applied-for commercial uses were justified under OAR 660-004-0022(1)(b), but it also found that the applied-for industrial uses were justified under OAR 660-004-0022(3)(a) and (c). Although petitioner's first assignment of error before LUBA applied to both parts of the county's analysis, LUBA did not expressly address the latter group of uses. Because we are reversing LUBA's order as to petitioner's first assignment of error before LUBA, on remand, LUBA will have the opportunity to address both parts of the county's reasoning.

asserts that LUBA misinterpreted the rule provision and, accordingly, that its order is "unlawful in substance." ORS 197.850(9)(a); *see Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001) (a LUBA order is unlawful in substance if "it represent[s] a mistaken interpretation of the applicable law").

A.  *TLM's Procedural Argument*

TLM responds, first, that the fact that petitioner has assigned error to LUBA's reasoning regarding OAR 660-012-0060(5), rather than challenging LUBA's evaluation of the county's reasoning that the requirements of OAR 660-004-0022 are satisfied—which appears in a different part of LUBA's opinion and does not address OAR 660-012-0060(5)—renders petitioner's assignment of error unreviewable. We reject that contention. Petitioner's argument before LUBA, and again before us, addresses the relationship between OAR 660-004-0022 and OAR 660-012-0060(5). More specifically, petitioner argues that OAR 660-012-0060(5) prohibits the county from taking exceptions under OAR 660-004-0022 based on the presence of the airport regardless of the correctness of its determination that the applied-for development meets the textual requirements of OAR 660-004-0022 based on the presence of the airport.

Regardless of whether petitioner could have raised the same underlying issue in a slightly different way by arguing that, in light of OAR 660-012-0060(5), the county erred in finding the textual requirements of OAR 660-004-0022 to be satisfied, the argument he makes on review is a legitimate way of raising the issue. Petitioner did not need to assign error to LUBA's evaluation of the county's reasoning about the textual requirements of OAR 660-004-0022.

TLM's argument is premised, to some extent, on its assertion that the county based the exceptions on more than just the presence of the airport. Thus, it contends, petitioner's failure to challenge the county's reasoning about the textual requirements of OAR 660-004-0022 means that his argument fails to address some factual predicate for the county decision beyond the presence of the airport.

However, TLM does not explain, nor do we—nor did LUBA—perceive, that the county identified any reason independent of the airport to site the development on the subject parcel. It is true that, in the course of addressing the textual requirements of OAR 660-004-0022, the county made further determinations necessary under that rule and OAR 660-004-0020—for example, that there was a need for airport-related development under Goal 9 and Goal 12 and that the subject parcel is uniquely well suited for airport-related development because of its location next to the airport and because of a runway access easement. However, none of the further determinations are independent of the airport; their relevance to the analysis is based on the county's initial premises that the applied-for development is airport-related and, consequently, has to be sited near the airport. The county's reasoning does not depend on any attribute of either the applied-for development or its proposed location that is not directly tied to the airport. Stated differently, when the airport is removed from the calculus, the county's reasoning collapses entirely.

Given that, petitioner's legal contention—that OAR 660-012-0060(5) prohibits reliance on the presence of the airport—if correct, completely undermines the county's reasoning. Thus, there is no factual predicate for the county's decision that is outside the scope of his challenge.

B.   *Interpretation of OAR 660-012-0060(5)*

TLM and the county's remaining arguments go to the merits of the rule construction issue that LUBA decided and that petitioner raises on review. We review interpretation of administrative rules for legal error. *Boatwright v. Dept. of Human Services*, 293 Or App 301, 304, 425 P3d 449 (2018); *see also Mountain West Investment Corp.*, 175 Or App at 559 (a mistaken interpretation of the law makes a LUBA order unlawful in substance). In construing an administrative rule, absent a controlling construction by the authoring agency, "we apply the same analytical framework that applies to the construction of statutes." *State v. Hogevoll*, 348 Or 104, 109-10, 228 P3d 569 (2010). That is, "we seek to divine the intent of the rule's drafters" by considering "the text of the rule in its regulatory and statutory context."

*Noble v. Dept. of Fish and Wildlife*, 355 Or 435, 448, 326 P3d 589 (2014). The text of a rule "is the starting point for interpretation and is the best evidence of the [enacting body's] intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

    1.   *Text*

       Thus, we begin with the text of OAR 660-012-0060(5), which was enacted by the Land Conservation and Development Commission (LCDC). As set out above, it provides, "The presence of a transportation facility or improvement shall not be a basis for an exception to allow residential, commercial, institutional, or industrial development on rural lands under this division or OAR 660-004-0022 and 660-004-0028."

       As described above, in this case, LUBA understood that text "to prohibit only an exception based on the existence of a transportation facility and not otherwise appropriate for an exception for reasons set out in OAR 660-004-0022." That is, LUBA understood OAR 660-012-0060(5) not to apply to exceptions under OAR 660-004-0022 that are based on the reasons specified in the rule. Initially—and, as we will explain, conclusively—we note a fundamental inconsistency between the text and that interpretation of it: The text does not state or imply that it applies to only a subset of the exceptions that can be taken under OAR 660-004-0022. By its terms, it prohibits exceptions "under *** OAR 660-004-0022" based on the existence of a transportation facility for the listed types of development on rural lands. If LCDC had intended the rule not to apply to exceptions based on the specified reasons in OAR 660-004-0022, as LUBA concluded, it seems to us that LCDC would have included that limitation in the text of the rule, rather than leaving it to LUBA or a court to insert a major limitation that is not evident from the text itself. The text of the rule does not support LUBA's interpretation of it.

       We agree with petitioner that it is more likely that LCDC intended the rule to mean what it says: "The presence of a transportation facility or improvement shall not be a basis for an exception to allow residential, commercial,

institutional, or industrial development on rural lands under this division or OAR 660-004-0022 and 660-004-0028."[6] In this context, we understand "*an* exception \*\*\* under \*\*\* OAR 660-004-0022" (emphasis added) to mean *any* exception under OAR 660-004-0022 (for the specified types of development on rural lands), not just a subset of possible exceptions under OAR 660-004-0022. *See Webster's Third New Int'l Dictionary* 1 (unabridged ed 2002) (one meaning of the indefinite article is "any, each—used with a following restrictive modifier <A man guilty of kidnaping wins scant sympathy.> <A man who is sick can't work well.>"). Stated differently, the rule indicates that no exception under OAR 660-004-0022 for the listed types of development on rural land shall be based on the presence of a transportation facility.

## 2. *LUBA's holding in* Columbia Riverkeeper

Our understanding of the rule is consistent with the outcome in *Columbia Riverkeeper*. In that case, LUBA reviewed a Columbia County decision that took reasons exceptions to allow port-related industrial development on 837 acres of land zoned for exclusive farm use adjacent to a river port, one of five deepwater ports in the state. 78 Or LUBA at 550. The port, a natural feature of the river, was already developed with a dock facility and rail connections. *Id.* The proposed development was limited to five categories of uses that "are intended to be significantly dependent on the deepwater port." *Id.* at 551.

Opponents of the development argued before the county that the reason for the exceptions was proximity to the dock facility, and, thus, that the exceptions violated OAR 660-012-0060(5) because docks are transportation facilities. *Id.* at 577. The county disagreed. It noted that one of the bases for the exceptions was OAR 660-004-0022(3)(a), which, as set out above, 323 Or App at 394-95, allows a reasons exception for industrial uses on rural land if "[t]he use is significantly dependent upon a unique resource located on agricultural or forest land. Examples of such resources and resource sites include geothermal wells, mineral or

---

[6] OAR 660-004-0028 governs exceptions for land "irrevocably committed to uses not allowed by the applicable goal." OAR 660-004-0028(1).

aggregate deposits, water reservoirs, natural features, or *river or ocean ports*." OAR 660-004-0022(3)(a) (emphasis added).

The county reasoned that, regardless of the dock facility, the exception was based, at least in part, "on the natural upland and aquatic features of the port, with the combination of flat developable upland in proximity to deep water and self-scouring features, aspects of a deepwater river port that is the 'unique resource' justifying an exception under OAR 660-004-0022(3)(a)." *Columbia Riverkeeper*, 78 Or LUBA at 578. In light of the fact that the text of OAR 660-004-0022(3)(a) referred specifically to "river *** ports," the county decided, an exception could be taken based on the port, without reliance on the dock facility—that is, the port independently qualified as a "unique resource" on which the proposed uses significantly depended. Given that, the county reasoned that OAR 660-012-0060(5) did not prohibit the exceptions. *Id.*

Before LUBA, Columbia Riverkeeper, one of the opponents, argued that there was no meaningful distinction between the dock facility—a transportation facility, on which an exception cannot be based under OAR 660-012-0060(5)—and the port itself, the "unique resource" that expressly justified the exception under OAR 660-004-0022(3)(a). *Columbia Riverkeeper*, 78 Or LUBA at 578. Columbia Riverkeeper contended that, as a result, the prohibition in OAR 660-012-0060(5) should be understood to supersede altogether OAR 660-004-0022(3)(c)'s express allowance of a river port as the basis for an exception. *Id.* at 579. In support of that view, it noted that, of the two rules, OAR 660-012-0060(5) was enacted later, and it contended that that indicated an intention for OAR 660-012-0060(5) to supersede the older rule. *Id.*

LUBA rejected Columbia Riverkeeper's argument, noting that understanding the river port—a "unique resource" specifically listed in OAR 660-004-0060(5)—to be indistinguishable from the transportation facility of the dock unnecessarily brought the two provisions into direct conflict. LUBA explained that it was not clear "that OAR 660-012-0060(5), read in context, is properly interpreted to prohibit

the establishment or expansion of an industrial area based on an existing river or ocean port authorized under OAR 660-004-0022(3)(a), as [Columbia] Riverkeeper argues." *Id.* at 579.

In our view, the remainder of LUBA's reasoning in *Columbia Riverkeeper*, 78 Or LUBA at 579-81, is not entirely clear. It could be based on the fact that river ports are specifically listed as qualifying "unique resources" in OAR 660-004-0022(3)(a). If that is the case, we understand LUBA's reasoning in *Columbia Riverkeeper* to be that an exception based on the presence of a river port is not prohibited by OAR 660-012-0060(5) because it is not based on "the presence of a transportation facility;" rather, it is properly understood to be based on the presence of a specifically listed unique resource that is conceptually separable from the transportation facility built on or near it—even if one value of that unique resource is that it can be developed with a transportation facility.

As we understand it, that reasoning rests on an interpretation of OAR 660-012-0060(5) that is consistent with the rule's plain text. It does not use "[t]he presence of a transportation facility" as "a basis for an exception," OAR 660-012-0060(5). Instead, by recognizing that the specifically listed examples in OAR 660-004-0022(3)(a) are not transportation facilities, even to the extent that their resource value comes from their potential for development with transportation facilities, that interpretation avoids conflict between OAR 660-012-0060(5) and the examples of unique resources listed in OAR 660-004-0022(3)(a).

If that was LUBA's reasoning in *Columbia Riverkeeper*, then we agree. And if that was LUBA's reasoning in *Columbia Riverkeeper*, then its holding in that case—that an exception based on something specifically listed in OAR 660-004-0022 that is conceptually separable from a transportation facility is not subject to the prohibition of OAR 660-012-0060(5)—does not prevent the prohibition from applying in this case. That is so because, as we have explained, here, the county's reasoning was based solely on the presence of the airport itself. The county did not identify any "special features or qualities," of the proposed

uses, OAR 660-004-0022(1)(b), any "significant comparative advantage due to [their] location (e.g., near existing industrial activity, an energy facility, or products available from other rural activities)," OAR 660-004-0022(3)(c), or any "unique resource" like "geothermal wells, mineral or aggregate deposits, water reservoirs, natural features, or river or ocean ports" near which they had to be sited, OAR 660-004-0022(3)(a)—that were conceptually separable from the airport, a transportation facility. In *Columbia Riverkeeper*, the river port, a specifically listed "unique feature" under OAR 660-004-0022(3)(a), was conceptually separable from the dock facility, a transportation facility, so an exception was allowed *based on the river port*—even though the existing dock facility would play some role in the analysis. Here, the county did not identify, and we do not perceive, any aspect of the airport or the applied-for uses that is conceptually separable from the transportation facility and specifically listed in OAR 660-004-0022.

However, significant parts of LUBA's opinion in *Columbia Riverkeeper* suggest that its holding is much broader, and, in its opinion in this case, LUBA appeared to adopt that broader holding. In *Columbia Riverkeeper*, LUBA stated its holding as being that "OAR 660-012-0060(5) is intended to prohibit only an exception based on the existence of a transportation facility for reasons that are not otherwise *specifically* listed as an appropriate reason for an exception set out in OAR 660-004-0022." 78 Or LUBA at 580 (emphasis added). In this case, LUBA restated that conclusion slightly differently, omitting the requirement that the reason be "*specifically* listed" as an appropriate reason: "OAR 660-012-0060(5) is intended to prohibit only an exception based on the existence of a transportation facility and not otherwise appropriate for an exception for reasons set out in OAR 660-004-0022." That is, in this case, LUBA understood its holding in *Columbia Riverkeeper* to have been that OAR 660-012-0060(5) applies only to exceptions taken under the catchall "but not limited to" language of OAR 660-004-0022. Under that interpretation, an exception may be based on the presence of a transportation facility as long as, based on the presence of the transportation facility, it can satisfy one of the reasons stated in OAR 660-004-0022.

That interpretation is inconsistent with the text of OAR 660-012-0060(5). However, as we have explained, there is an interpretation of OAR 660-012-0060(5) that is consistent with the rule's text and leads to the same conclusion on the facts of *Columbia Riverkeeper*. Regardless of how we characterize LUBA's reasoning in *Columbia Riverkeeper*, then, the outcome in that case is compatible with our text-based understanding of OAR 660-012-0060(5) in this case.

In *Columbia Riverkeeper*, LUBA noted one textual point, related to OAR 660-004-0022(3)(c), that bears further discussion. Again, that rule provision, which is one of the specified reasons for an exception for industrial development on rural lands, provides as follows:

> "The use would have a significant comparative advantage due to its location (*e.g.*, near existing industrial activity, an energy facility, or products available from other rural activities), which would benefit the county economy and cause only minimal loss of productive resource lands. Reasons for such a decision should include a discussion of the lost resource productivity and values in relation to the county's gain from the industrial use, and the specific transportation and resource advantages that support the decision."

OAR 660-004-0022(3)(c). In *Columbia Riverkeeper*, LUBA pointed out that the second sentence of that paragraph notes that the county should discuss "the specific transportation and resource advantages that support the decision," and stated that that text "presumably would allow the county to consider advantages provided by proximity to an existing transportation facility." 78 Or LUBA at 580.

Insofar as LUBA's point was that transportation advantages of certain locations are not categorically excluded from the county's discussion of the reasons for the exception, we agree. However, to the extent that LUBA understood that text to override OAR 660-012-0060(5) and expressly allow exceptions for industrial uses under OAR 660-004-0022(3)(c) based on their location near transportation facilities, we disagree. For our purposes here, the essence of an exception justified by OAR 660-004-0022(3)(c) is that "[t]he use would have a significant comparative advantage

due to its location (e.g., near existing industrial activity, an energy facility, or products available from other rural activities)." Like the examples of "unique resources" listed in OAR 660-004-0022(3)(a), the listed uses and resources in OAR 660-004-0022(3)(c)—industrial activity, an energy facility, or products available from other rural activities— are not transportation facilities. Necessarily, analysis of the extent to which a use will have a comparative advantage based on a location near one of those other uses or resources will involve consideration of how the location interacts with the transportation system. However, in light of OAR 660-004-0060(5), the county cannot decide that a transportation facility *is* the other use or resource from which the comparative advantage arises.

###   3.   *LUBA's reasoning regarding transportation facility expansions*

Finally, we consider LUBA's concerns, expressed both in *Columbia Riverkeeper* and in this case, about expansions of transportation facilities on rural land. In this case, LUBA noted that its decision avoided concerns about the effect of OAR 660-012-0060(5) on expansions of transportation facilities. However, as *amicus* 1000 Friends points out, the effect of OAR 660-012-0060(5) on expansions of transportation facilities is not directly at issue in this case. As we explained in our previous opinion, the applied-for development is not part of the airport. *Schaefer*, 318 Or App at 620 ("Requests for comprehensive plan amendments and zone changes, like the ones at issue here, sought by private parties without corresponding expansion of the airport boundary through the airport planning process are not expansions of public use airports within the meaning of OAR 660-012-0065(3)(n)."). And neither the county nor LUBA suggested that the proposed development itself— that is, the applied-for commercial and industrial uses, independent of the airport—qualifies as a transportation facility. OAR 660-012-0005(46) (A transportation facility is "any physical facility that moves or assist[s] in the movement of people or goods including facilities identified in OAR 660-012-0020 but excluding electricity, sewage, and water systems.").

To any extent to which our interpretation might indirectly affect expansion of transportation facilities, we are not persuaded that any such effects require us to reach a different conclusion about the meaning of OAR 660-012-0060(5). First, we question, but need not decide, whether OAR 660-012-0060(5) even applies to exceptions for transportation facilities themselves. *See* OAR 660-012-0060(5) (prohibiting certain exceptions for "residential, commercial, institutional, or industrial development"). Second, and dispositively, the text of OAR 660-012-0060(5) is not susceptible to any reading that would support LUBA's view that the rule should be construed narrowly based on concerns about expansion of transportation facilities. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) ("[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." (Internal quotation marks omitted.)).

## III.   CONCLUSION

We conclude that OAR 660-012-0060(5) means what it says: "The presence of a transportation facility or improvement shall not be a basis for an exception to allow residential, commercial, institutional, or industrial development on rural lands under this division or OAR 660-004-0022 and 660-004-0028." If an exception is based on a use, resource, or characteristic that is specifically listed in OAR 660-004-0022 and is conceptually separable from a transportation facility—as was the case in *Columbia Riverkeeper*—then it is not prohibited by OAR 660-012-0060(5).[7]

In this case, the county reasoned that the uses at issue have "special features or qualities that necessitate [their] location on or near the proposed exception site" because the uses are airport related and must be located near a public-use airport. OAR 660-004-0022(1)(b). It is undisputed that public-use airports are "transportation facilities." Thus, the exception was based on "the presence

---

[7] This case does not require us to decide whether it would be possible to base an exception on a use, resource, or characteristic that, unlike the river port in *Columbia Riverkeeper*, is not specifically listed in OAR 660-004-0022, but that nevertheless is conceptually separable from a transportation facility. We reserve that question for a case in which it is presented.

of a transportation facility," in violation of OAR 660-012-0060(5). Accordingly, LUBA's rejection of petitioner's first assignment of error before LUBA was unlawful in substance.

Reversed and remanded.