No. 733　　　　　　October 16, 2024　　　　　　501

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Karen DURANY,
Personal Representative of
the Estate of Margaret McKechnie,
*Plaintiff-Respondent,*

*v.*

MARJORIE HOUSE McMINNVILLE, LLC,
an Oregon corporation doing business as
Marjorie House Memory Care,
*Defendant-Appellant.*

Yamhill County Circuit Court
22CV17053; A180185

Cynthia Kaufman Noble, Judge.

Argued and submitted July 10, 2024.

Janelle W. Debes argued the cause and filed the briefs for appellant. Also on the briefs were John E. Pollino and Garrett Hemann Robertson PC.

Faith Morse argued the cause and filed the briefs for respondent. Also on the briefs was Morse Law LLC.

Emily Teplin Fox filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Balmer, Senior Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from an interlocutory ruling denying its motion to compel arbitration and stay the proceedings pending arbitration of claims for negligence and wrongful death, claims that plaintiff brought as the personal representative of her mother's estate. The claims arose out of care that defendant provided to plaintiff's mother while she was a resident at defendant's care facility. The trial court denied defendant's motion after concluding that, although plaintiff had the authority to enter into the arbitration agreement on her mother's behalf, the arbitration agreement was not enforceable because it violated OAR 411-054-0027(1)(p).[1] Defendant challenges that ruling, arguing that the Federal Arbitration Act, 9 USC sections 1 to 16, preempts the rule. Plaintiff cross-assigns error to the trial court's determination that she had legal authority to bind her mother to the arbitration agreement. We conclude that plaintiff did not have legal authority to enter into the agreement on her mother's behalf. That conclusion obviates the need to address defendant's preemption argument. Accordingly, we affirm.

At the time of admission to defendant's facility, plaintiff's mother suffered from dementia. Plaintiff signed admission documents on her mother's behalf, including a "Resident Admission Agreement" and an arbitration agreement that required a separate signature.

The "Resident Admission Agreement" included a section titled "Resident's Representative," which provided that the person signing the document was

"designated by the Resident as his or her Representative for the purpose of this contract. This is the person the Resident wishes the Facility to contact in case of emergency, or for consultation relating to care, services or other needs. If Resident has a legal Representative, then discussions and notices addressed to Resident in this Agreement should

---

[1] After plaintiff brought her claims, that rule was renumbered but not substantively amended. We cite to the current version, which provides that a facility must implement a residents' "Bill of Rights" that, among other things, states that residents have the right to "be free of any written contract or agreement language with the facility that purports to waive their rights or the facility's liability for negligence."

be made to the Resident Representative. The Resident Representative personally guarantees all financial and other obligations of this Agreement. However, if another person holds a Power of Attorney or is the legal guardian of the Resident, that individual(s) may be involved in financial or health care decisions. If legal documentation exists designating a Power of Attorney for healthcare or legal guardian, a copy must be provided to the Facility, and notice provided of any changes in this designation."

The two-page arbitration agreement stated that "the Resident agrees that any and all claims and disputes arising from or related to the Marjorie House Resident Admission Agreement or to the Resident's care or services at Marjorie House shall be resolved by submission to neutral, binding arbitration[.] *** Both parties give up their right to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration." The document also stated that the "execution of this Arbitration Agreement is not a precondition to the execution of the Marjorie House Resident Admission Agreement."

Plaintiff signed both the Resident Admission Agreement and the arbitration agreement on her mother's behalf, representing that she was the "Resident Representative." Plaintiff's mother did not sign either document, and she had not executed a power of attorney and did not have a conservator or guardian.

Plaintiff's mother resided at defendant's facility until her death. Plaintiff, as the personal representative of her mother's estate, filed negligence and wrongful death claims against defendant. Defendant filed a motion to compel arbitration and stay the proceedings pending arbitration, arguing that plaintiff had lawfully executed the arbitration agreement on behalf of her mother and that, under the Federal Arbitration Act, 9 USC sections 1 to 16, the trial court was required to enforce the agreement against her mother's estate.

In response, plaintiff argued that the agreement was not enforceable on multiple grounds. First, plaintiff argued that the arbitration agreement was not valid because she did not hold a power of attorney or any other legal authority

to sign the contract on her mother's behalf. Plaintiff also argued, among other things, that the arbitration agreement violated OAR 411-054-0027(1)(p), which provides that residents in licensed care facilities have the right "[t]o be free of any written contract or agreement language with the facility that purports to waive their rights or the facility's liability for negligence."

Defendant countered that plaintiff had legal authority to enter into the arbitration agreement on her mother's behalf as a "designated representative" under OAR 411-054-0005(27).[2] That rule defines "designated representative" as

"(a) Any adult, such as a parent, family member, guardian, advocate, or other person, who is:

"(A) Chosen by the individual or, as applicable, the legal representative;

"(B) Not a paid provider for the individual; and

"(C) Authorized by the individual, or as applicable the legal representative, to serve as the representative of the individual, or as applicable the legal representative, in connection with the provision of funded supports."[3]

Defendant argued that plaintiff's mother "chose" plaintiff to be her designated representative, as evidenced by the fact that plaintiff's mother lived on plaintiff's property prior to being admitted to defendant's facility; plaintiff authorized the release of her mother's medical records to defendant before admission; plaintiff "held herself out to [defendant] as [her mother's] designated representative"; and plaintiff had been involved in arranging medical care for her mother.

At the hearing on the motion, plaintiff argued that "there is zero evidence on the record that [plaintiff's mother] chose or authorized [plaintiff] to sign anything on her behalf." Plaintiff also argued that, even if her mother

_____

[2] After plaintiff brought her claims, that rule was renumbered but not substantively amended. We cite to the current version.

[3] "Funded" supports refers to Medicaid-funded Home and Community-Based Services (HCBS) and settings which must comply with federal regulations. OAR 411-004-0000(3); OAR 411-054-0000(2) ("Residential care and assisted living facilities are also required to adhere to Home and Community-Based Services[.]").

had chosen her to be a designated representative, the rule "is very helpful in some situations but to bind a memory care resident who does not have a power of attorney, this section does not give the facility the ability to do that. It simply doesn't have the ability to create a legal representative when one does not already exist."

The trial court ruled that, under OAR 411-054-0005(27), plaintiff had the legal authority to execute the arbitration agreement on behalf of her mother, stating that "under basic contract law we've got an arbitration agreement in 2020 that was entered into by the plaintiff. I believe that she is recognized in her capacity as the [designated] representative. There's certainly reasons that that ability was put into place in situations for families that didn't have POAs or conservators to be able to help get a party in care." The court denied the motion to compel arbitration, however, after concluding that the arbitration agreement violated OAR 411-054-0027(1)(p). The court thus entered an order denying defendant's motion to compel arbitration.

Defendant then brought this interlocutory appeal, arguing that the court incorrectly denied the motion because the Federal Arbitration Act preempts OAR 411-054-0027 (1)(p). *See* ORS 36.730(1)(a) (an appeal may be taken from an order denying a motion to compel arbitration). Plaintiff cross-assigns error to the trial court's determination that she had authority to sign the contract on her mother's behalf. The resolution of plaintiff's cross-assignment is dispositive, so we turn to the parties' relevant arguments.

As a threshold matter, defendant contends that plaintiff was required to file a cross-appeal. More specifically, defendant argues that plaintiff is seeking to "modify the trial court's ruling by concluding [plaintiff] did not have the authority to enter into the arbitration agreement on behalf of her mother." We disagree. Plaintiff is not seeking to reverse or modify the trial court's order denying defendant's motion to compel arbitration. Rather, plaintiff is raising an alternative ground on which the trial court's order may be upheld—that plaintiff did not have the legal authority to enter into the arbitration agreement on her mother's behalf. *See Murray v. State of Oregon*, 203 Or App 377, 388, 124 P3d

1261 (2005), *rev den*, 340 Or 672 (2006) ("We have explained that a cross-appeal is not necessary where a respondent raises an alternative ground on which the judgment may be upheld[.]") (Internal citation omitted.)). Plaintiff was therefore not required to file a cross-appeal.

Turning to the merits, plaintiff renews her argument that, because she neither held a power of attorney nor was her mother's conservator or guardian, she did not have the legal authority to contract on her mother's behalf. *See Drury v. Assisted Living Concepts, Inc.*, 245 Or App 217, 262 P3d 1162, *rev den*, 351 Or 318 (2011) (resident agreement with an arbitration clause, signed by resident's son, who did not have power of attorney for resident nor was resident's guardian or conservator, did not bind resident's estate; resident, who did not sign the agreement and suffered from dementia at the time, did not manifest her assent to the terms of the agreement). Plaintiff further argues that OAR 411-054-0005(27), which defines "designated representative," did not provide independent legal authority for plaintiff to sign a contract on her mother's behalf.

We review the denial of a motion to compel arbitration for legal error. *Lumm v. CC Services, Inc.*, 290 Or App 39, 43, 414 P3d 454 (2018). Arbitration arises as a matter of contract, and a valid contract requires "a meeting of the minds of the parties, a standard that is measured by the objective manifestations of intent by both parties to bind themselves to an agreement." *Drury*, 245 Or App at 221 (internal quotation marks and citation omitted). Here, plaintiff's mother did not sign the arbitration agreement, and as noted above, plaintiff did not hold a power of attorney and was not a conservator or guardian. We agree with plaintiff that, under *Drury*, plaintiff did not have the legal authority to bind her mother to the arbitration agreement.[4] Because OAR 411-054-0005(27) did not become effective until after

---

[4] We also note that plaintiff did not have apparent authority to enter into the arbitration agreement on her mother's behalf. Apparent authority requires that the principal—in this case plaintiff's mother—"engage in some conduct that the principal should realize is likely to cause a third person to believe that the agent has authority to act on the principal's behalf." *Taylor v. Ramsay-Gerding Construction Co.*, 345 Or 403, 410, 196 P3d 532 (2008) (internal quotation marks and citation omitted). Defendant does not argue, and the record does not establish, that plaintiff's mother engaged in the type of conduct that would reasonably

*Drury*, however, *Drury* did not address whether that rule grants a designated representative the legal authority to enter into an arbitration agreement on an individual's behalf. Assuming, without deciding, that plaintiff's mother "authorized" plaintiff to be her designated representative, as required under OAR 411-054-0005(27), we conclude that that rule did not authorize plaintiff to enter into the arbitration agreement on her mother's behalf.

In interpreting administrative rules, "absent a controlling construction by the authoring agency, we apply the same analytical framework that applies to the construction of statutes." *Schaefer v. Marion County*, 323 Or App 390, 400, 523 P3d 1142 (2022) (internal quotation marks and citation omitted). Under that framework, "we seek to divine the intent of the rule's drafters by considering the text of the rule in its regulatory and statutory context." *Id.* (internal quotation marks omitted). We conclude that the plain text and context of the rules indicate that a designated representative does not have the legal authority to enter into a binding arbitration agreement on behalf of an individual.

First, contrary to defendant's argument, the text of OAR 411-054-0005(27)(C) does not, on its face, explicitly authorize a designated representative to serve as the legal representative of the individual. The rule states that a designated representative is someone "[a]uthorized by the individual, or as applicable the legal representative, to serve as the representative of the individual, *or as applicable the legal representative*, in connection with the provision of funded supports." OAR 411-054-0005(27)(C) (emphasis added). Defendant interprets that text to mean that a designated representative is authorized to serve as the representative or, as applicable, the legal representative, of the individual. The grammatical structure of the rule, however, indicates that a designated representative is someone authorized by the *individual* to serve as the representative of the *individual*, or, as applicable, someone authorized by the *legal representative* to serve as a representative of the *legal representative*. In other words, the rule does not permit,

---

cause defendant to believe that plaintiff had the authority to agree to mandatory arbitration on her mother's behalf.

absent some other authority, a designated representative to serve as a legal representative.

That conclusion is consistent with the fact that the rules provide a separate definition for "legal representative." *See* OAR 411-054-0005(61) (a legal representative is "a person who has the legal authority to act for an individual"). Thus, a legal representative's authority is distinct from a designated representative's authority. *See State v. Newell*, 238 Or App 385, 392, 242 P3d 709 (2010) (the use of different terms generally means that those terms have different meanings).

With respect to the scope of a designated representative's authority, the rule that defines a designated representative limits the authority of a designated representative to serving as the representative of the individual "in connection with the provision of funded supports." OAR 411-054-0005(27)(C). "Funded supports," in turn, refers to services provided by Medicaid-funded residential care and assisted living facilities. OAR 411-004-0000; OAR 411-054-0000(2).

Thus, a designated representative's authority is limited to serving as the representative of an individual in connection with the provision of services. That authority includes, for instance, entering into a residency agreement on behalf of an individual. OAR 411-004-0010(18) (a designated representative can enter into a "residency agreement," in turn defined as a "written, legally enforceable agreement between a residential provider and *** [a] designated representative of the individual" that "identifies the rights and responsibilities of the individual and the residential provider"). The designated representative's authority, again in connection with the provision of services for the individual in an assisted living facility, also includes selecting a residential setting, and assisting an individual in the process of developing "person-centered service plans" and a risk agreement. OAR 411-004-0020(1)(b) - (f) (describing residential or nonresidential setting options available to be chosen "by an individual or, as applicable, the *** designated representative of the individual"); OAR 411-004-0010(14) and OAR 411-004-0030(2)(a)(B) (a "person-centered service plan" is "the written details of the supports, desired outcomes,

activities, and resources required for an individual to achieve and maintain personal goals, health, and safety" and "must be developed by the individual and, as applicable, the *** designated representative"); OAR 411-054-0036(6) (a risk agreement "explore[s] alternatives and potential consequences with the resident" when the resident's "actions or choices pose a potential risk to that resident's health or well-being" and must be developed with "the resident's designated representative"). Importantly, no rule purports to grant a designated representative legal authority to enter into an arbitration agreement—a contract that concerns a resident's right to a jury trial rather than services provided by a facility—on behalf of a resident. In other words, even if, in the abstract, an arbitration agreement "identifies the rights and responsibilities of the individual and the residential provider," OAR 411-004-0010(18) (defining "residency agreement"), an individual's right to a jury trial is not connected to the facility's provision of services. Consequently, an arbitration agreement is not an agreement that the designated representative can enter into on the individual's behalf.

We note that our text-based understanding that the rules do not provide authority for a designated representative to waive the right to a jury trial on behalf of an individual is consistent with OAR 411-054-0027. That rule describes residents' rights and protections that each facility must implement. One of those rights is to be "free of any written contract or agreement language with the facility that purports to waive their rights or the facility's liability for negligence." OAR 411-054-0027(1)(p). Construing the rules related to designated representatives in the manner that we have—so as to prevent a designated representative from waiving a person's right to a jury trial—is consistent with the prohibition on binding residents to any contract or agreement that "waive[s] their rights[.]" *Id.*

We thus conclude that under the plain text and context of the rules, there is no independent legal authority for a designated representative to enter into an arbitration agreement on an individual's behalf. Accordingly, because plaintiff did not hold a power of attorney or any other legal

authority that authorized her to bind her mother to the arbitration agreement, the trial court erred in concluding that she had authority to agree to arbitration on her mother's behalf. Consequently, the trial court correctly denied the motion to arbitrate.

Affirmed.