Submitted on record and briefs June 1, reversed and remanded on petition; affirmed on cross-petition August 22, 2001

# FOUNTAIN VILLAGE DEVELOPMENT COMPANY,
*Petitioner - Cross-Respondent,*

*v.*

# MULTNOMAH COUNTY,
*Respondent - Cross-Petitioner,*

*and*

# Arnold ROCHLIN,
*Respondent - Cross-Respondent.*

2000-051; A112829

31 P3d 458

Phillip E. Grillo, Christopher D. Crean and Miller Nash LLP filed the briefs for petitioner - cross-respondent.

Sandra N. Duffy and Thomas Sponsler filed the brief for respondent - cross-petitioner Multnomah County.

Arnold Rochlin *pro se* filed the brief for respondent - cross-respondent Arnold Rochlin.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges

HASELTON, P. J.

## HASELTON, P. J.

Petitioner, Fountain Village Development Company, petitions for review of a final opinion and order of the Land Use Board of Appeals (LUBA), determining that Fountain Village had lost an alleged vested right to complete and use a log cabin on land zoned for commercial forest use. Respondent, cross-petitioner Multnomah County, does not challenge LUBA's determination of the vested rights issue but, by way of a "conditional cross-petition," asserts that if we reverse or modify LUBA's decision, we should direct LUBA to determine certain additional matters. We reverse and remand on the petition and affirm on the cross-petition.[1]

The basic facts are not in dispute, and we take them, in the greater part, from LUBA's opinion. In 1985, the landowner constructed a concrete bunker for the purpose of growing marijuana plants on 38 acres in east Multnomah County. At that time, the property was zoned for Multiple Use Forest (MUF). MUF zoning permitted a dwelling on a parcel of 38 acres or more.[2]

The owner began construction of a log cabin on top of the bunker sometime before March 1987. Because the owner lacked a building permit for the construction, Multnomah County issued a "stop work order." By March 10, 1987, the landowner applied for, and was issued, a building permit for the log cabin construction. Work on the cabin continued, but it was not finished. After 1987, there was no further construction, and there were no further expenditures toward construction. In 1991, a renewed building permit issued, but no construction was undertaken under the renewed permit. LUBA characterized the 1987 permit as having expired.[3]

---

[1] Respondent Rochlin filed a brief supporting LUBA's final order. Rochlin took part in proceedings before the county and furnished materials incorporated into the county's order as findings. He intervened before LUBA and filed a brief supporting the county's decision.

[2] LUBA's opinion states that the minimum lot size was 10 acres. Multnomah County Code section 11.15.2168(E) provides that a single-family dwelling may be constructed on a lot of 38 acres.

[3] The parties do not explain the legal basis for the issuance of the renewed permit in 1991. A copy of the applicable portion of the 1990 Uniform Building Code (UBC) is in the county's record. The parties do not dispute UBC applicability. *See* ORS 455.040 and OAR 918-460-0010. The UBC provides that a building permit becomes "null and void" if the work authorized is not commenced within six months

In 1992, federal agents found marijuana on the property and subsequently seized the property, apparently because it was purchased with the proceeds of illegal drug trafficking. Multnomah County then acquired title to the property. On January 7, 1993, the county changed the zoning from MUF to Commercial Forest Use (CFU). In the CFU zone, a single family dwelling is a conditional use, not an outright permitted use. MCC 11.15.2050(B). The effect of the zone change was that a person who sought to build a dwelling on the property would have to obtain specific permission for the dwelling subject to county conditions.

The former landowner reacquired the 38-acre property, and, in a series of transactions in 1993 and 1994, the present petitioner, Fountain Village Development Company, purchased it. Petitioner paid some $25,000 for the two-acre portion upon which the cabin is sited. In 1994, the county approved a lot line adjustment that reduced the portion of the property housing the cabin to 2.96 acres. The remainder of the property was sold.

In 1995, petitioner spent some $3,000 to clear soil off the bunker, construct a road to the site, and hire an engineer to review the integrity of the uncompleted log cabin. Petitioner made no efforts to complete the cabin for occupancy because interest rates for second-home loans were then unfavorable. Between 1995 and 1998, petitioner cleared brush, replaced broken windows, and maintained the roof, but did not perform any work to complete the cabin. Petitioner applied for a loan to complete the cabin in 1998 when interest rates fell.

On September 24, 1999, petitioner asked the county for a legal status determination regarding the cabin. The county issued an administrative decision, which concluded

from the permit issue date, "or if the building or work authorized by such permit is suspended or abandoned at any time after the work is commenced for a period of six months." UBC § R-109.3 The code also says that before work can be resumed, "a *new* permit shall be obtained to do so * * *." *Id.* (emphasis added). A "one-time" extension is possible provided that the permittee holding an *unexpired* permit can show good and satisfactory reasons ("beyond his control") why the work cannot be commenced within the six-month initial period.

that petitioner had no vested right to complete and use the cabin. The administrative decision treated the residential use as a nonconforming use and said the use had been abandoned or discontinued under the county code. The decision relied on MCC 11.15.8805(B), which provides:

> "If a non-conforming structure or use is abandoned or discontinued for any reason for more than two years, it shall not be re-established unless the resumed use conforms with the requirements of this code at the time of the proposed resumption."

Petitioner sought review before a hearing officer. The hearing officer considered the matter and concluded that any vested right to complete and use the cabin as a nonconforming use had been abandoned or discontinued. The hearing officer determined that the code governing nonconforming uses applied because, "[a]s vested rights are simply a right to complete establishing a nonconforming use, it is logical to find that the rules that govern the loss of nonconforming rights apply to vested rights." Petitioner took the matter to the Board of Commissioners, which affirmed the hearing officer's decision but also incorporated suggested findings by intervenor respondent - cross-respondent Rochlin. Among those proposed and incorporated findings was the proposition that petitioner, as applicant, had not "carried the burden of showing there was not a 2-year discontinuation of *substantial effort* to finish" the development.[4] (Emphasis added.)

Before LUBA, petitioner attacked the county's application of its code provisions addressing abandonment and discontinuance of a nonconforming use. Petitioner asserted that the county code could not possibly be applied to its circumstance because the code at MCC 11.15.8805 governs "uses," and, in this case, no "use" had been established. In other words, to petitioner, a vested right to complete a use is not a nonconforming use and could not be treated as such.

---

[4] LUBA ultimately understood the resultant combined document, with Rochlin's suggested findings, to conclude both that petitioner had not demonstrated the existence of a vested right to complete the cabin, and, alternatively, that, in all events, any alleged interest had been lost through abandonment and discontinuation.

In the alternative, petitioner argued that, because the county code expressly provides that "a nonconforming structure or use may be maintained with ordinary care," MCC 11.15.8805(C), the county could not conclude that petitioner had lost its vested right through abandonment or discontinuance. Petitioner also contended that the county's ostensible reliance on a "substantial effort" standard for discontinuance was erroneous as inconsistent with the "ordinary care" language of MCC 11.15.8805(C). Petitioner also pointed to facts showing that it maintained the cabin during the same years that the county relied on in finding that the use had been abandoned or discontinued.

LUBA did not address whether petitioner, in fact, had a vested right in completing and using the cabin. Rather, LUBA concluded that, even assuming that such a vested right had ever existed: (1) It could be lost in the same manner as nonconforming use—*i.e.*, through abandonment or discontinuance, MCC 11.15.8805(B); and (2) substantial evidence supported the county's finding of discontinuance.

LUBA's fundamental holding is that "vested rights, like nonconforming use rights, may be lost where the holder fails to diligently exercise those rights." In particular, petitioner's alleged vested right to build was subject to being forfeited by abandonment or discontinuance pursuant to ORS 215.130(5) and (10) and MCC 11.15.8805(B).[5] As support for that conclusion, LUBA invoked *Clackamas County v.*

---

[5] ORS 215.130(5) is direct legislative authority for the county code provisions controlling nonconforming uses. That statute provides, in part, that the "lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued." ORS 215.130(7)(a) states that a nonconforming use as described in subsection (5) "may not be resumed after a period of interruption or abandonment unless the resumed use conforms with the requirements of zoning ordinances or regulations applicable at the time of the proposed resumption."

ORS 215.130(10) authorizes counties to adopt standards and procedures to implement the provisions of ORS 215.130, including authority to establish criteria "to determine when a use has been interrupted or abandoned under subsection (7) of this section * * *." ORS 215.130(10)(b). As relevant here, the county implemented ORS 215.130 through MCC 11.15.8805(B), which provides that, if

"a non-conforming structure or use is abandoned or discontinued for any reason for more than two years, it shall not be re-established unless the resumed use conforms with the requirements of this code at the time of the proposed resumption."

*Holmes,* 11 Or App 1, 501 P2d 333 (1972), *rev'd on other grounds* 265 Or 193, 508 P2d 190 (1973), for the proposition that "Oregon courts have consistently treated a vested right as a nonconforming use that differs primarily in that the landowner need not establish 'actual use.' "[6] *See also Twin Rocks Watseco v. Sheets,* 15 Or App 445, 448, 516 P2d 472 (1973), *rev den* (1974) (construing "use of any building" in ORS 215.130(5) to mean an existing building or one upon which substantial work has been completed).

By extension, LUBA rejected petitioner's assertion that the only restrictions applicable to continuance of a vested right are equitable defenses, such as laches. Indeed, LUBA observed that it would be incongruous to confer greater protection on the vested right to create a use than on the eventual use itself.

Petitioner argued, nonetheless, that abandonment requires proof of an intent to abandon the putative use, and that here there was no evidence of such an intent. Petitioner pointed specifically to its maintenance of the unfinished structure from 1995 to 1998, and asserted that it was reasonable to delay finishing the cabin because of unfavorable interest rates at the time. LUBA agreed with petitioner that there was not substantial evidence in the record to show an intent during the period 1995-98 to abandon a right to complete and use the cabin.

That determination did not end the matter, however, because MCC 11.15.8805(B) provides that a nonconforming use may be lost by *either* abandonment *or* discontinuance and, while the former requires proof of intent to relinquish a known right, the latter does not. Consequently, LUBA next considered whether the petitioner's failure to continue development of the cabin resulted in loss through "discontinuance."

---

[6] LUBA rejected petitioner's suggestion that, because *Holmes* did not refer to ORS 215.130, the court must have viewed the statute as inapplicable to vested rights claims. LUBA noted that there could be any number of reasons why the court might not have discussed the statute, "including the possibility that no issue was raised under that statute." We note that the briefs before the Supreme Court in *Holmes* did not mention ORS 215.130.

■ ■ In that regard, petitioner argued that its maintenance of the cabin precluded any finding of discontinuance. LUBA rejected that argument and, in doing so, apparently sustained the county's determination that there was a "discontinuance of substantial effort to finish the development" over the requisite two-year period:

> "According to petitioner, because MCC 11.15.8805(C) allows a nonconforming use or structure to be 'maintained with ordinary care,' such maintenance during a period of time negates a finding of discontinuance during that period. We disagree. The county's decision views a vested right to complete a partially completed building to be lost if there is 'discontinuance of substantial effort to finish the development' over the requisite two-year period. There is no dispute that petitioner's actions in maintaining the site over the period 1995 to 1998 did nothing to finish the development."[7]

On review, petitioner reiterates its arguments before LUBA. We begin with petitioner's core contention that statutes and local laws governing nonconforming uses do not apply to vested rights generally, much less to petitioner's circumstances specifically.[8]

■ Petitioner asserts, in effect, that if the legislature had wanted to include vested rights within the scope of the laws governing nonconforming uses, it could have, and would

---

[7] LUBA also rejected petitioner's contention that it was reasonably justified in deferring completion of the structure because of disadvantageous interest rates. In so holding, LUBA emphasized that MCC 11.15.8805(B) provides that a nonconforming use that is discontinued *"for any reason"* for more than two years cannot be resumed unless it conforms with the county zoning ordinance.

[8] In so framing our analysis, we imply no view as to whether petitioner ever had a vested right to build and complete the cabin.

As noted, LUBA's opinion began with the assumption petitioners had a vested right to complete the cabin when the zoning changed from MUF to CFU. Because petitioner acquired the property after the zone change, LUBA's assumption includes an additional element, *viz.*, that the new owners acquired a vested right from the prior owner. LUBA did not discuss the acts giving rise to the assumed vested right or how the right, if enjoyed by the former owner by virtue of his work and expenditures, survived the lapse of the building permits. *See* MCC 11.15.2072(A) (permitting completion of a dwelling under a building permit issued prior to the effective date of the zone change *providing* the building permit is kept valid).

have, said so explicitly. Instead, in petitioner's view, the legislature enacted "vesting statutes" that give landowners a right to develop their property under regulations existing when the right vested. As an example of such a "vesting statute," petitioner points to ORS 215.427(3), which requires that, in certain circumstances, approval or denial of a land use application "shall be based upon the standards and criteria that were applicable at the time the application was first submitted." Thus, in petitioner's view, as long as a vested right has not been realized through actual use (here, the completion of the cabin), it is not subject to nonconforming use treatment. In sum, petitioner argues that

> "the legislature recognizes two related but distinct set of rights—the vested right of a property owner to *build* a development under a certain set of regulations [quoting statutes], versus the right of a property owner to *use* of the property (ORS 215.130), even though the use or structure no longer conforms to the existing regulations. The county and LUBA confuse and conflate these two related but distinct property interests." (Emphasis in original.)

We reject petitioner's proposed mutually exclusive dichotomization of "vested rights" and "nonconforming uses." Nothing in Oregon's case law or statutes precludes subjecting vested rights to develop property to the same limitations that apply to nonconforming uses generally—and, indeed, as addressed below, not to do so would yield incongruous results. Moreover, under ORS 215.050(1),[9] counties are responsible for adopting comprehensive plans, as well as zoning, subdivision, and other ordinances applicable to all land within the county. Just as the regulation of existing nonconforming uses is a matter within a county's authorized land use purview, so too is the regulation of vested rights to develop—which are, in effect, inchoate nonconforming uses. The fact that ORS 215.130 does not explicitly use the term

---

[9] ORS 215.050(1) provides:

"Except as provided in ORS 527.722, the county governing body shall adopt and may from time to time revise a comprehensive plan and zoning, subdivision and other ordinances applicable to all of the land in the county. The plan and related ordinances may be adopted and revised part by part or by geographic area."

"vested rights" does not mean that local governments responsible for ordinances controlling land use are powerless to address and regulate the conditions under which vested rights may be extinguished. We conclude, therefore, that Multnomah County's application of MCC 11.15.8805 in this case was within the county's authority.

The Supreme Court's decisions in *Holmes* and *Polk County v. Martin*, 292 Or 69, 636 P2d 952 (1981), comport with that understanding. In *Holmes*, the court did not address the question of whether a vested right alleged to have been abandoned or discontinued would be tested under the law governing nonconforming uses. However, the court did introduce its discussion of the facts necessary to show existence of a vested right by observing that the "allowance of nonconforming uses applies not only to those actually in existence but also to uses which are in various stages of development when the zoning ordinance is enacted." *Holmes*, 265 Or at 197.

In *Martin*, the court considered Polk County's claim for injunctive relief in which the county asserted that the defendant's intermittent use of a rock quarry was not sufficient to confer any right to a nonconforming use and not sufficient to continue the use. In addition, the county asserted that interruption of the use and the defendant's use of the property after the zoning law became effective resulted in an unauthorized enlargement or prohibited increase in the use. *See* ORS 215.130(9). The court disagreed and, in the course of its opinion, expanded somewhat on its discussion of vested rights in *Holmes*. It characterized *Holmes* as addressing

> "the degree of development which must exist before an owner of partially developed property can be said to have established a 'lawful use' of property under the statutes, so as to use the property as intended even though the use would not be permitted under the zoning law which became effective while the property was being improved." *Martin*, 292 Or at 80.

The court in *Martin* treated the right to continue development and use the property as a "vested right" but, at the same time, considered the question of whether the landowner had abandoned the right to use the property under ORS

215.130. In that sense, the court's framing of the controversy before it showed that it viewed the vested right (to develop a use) as having merged into the fully developed nonconforming use.

Thus, nothing in *Martin* or in *Holmes* suggests that the court viewed a vested right to develop property, or an unfinished use, as a distinct variety of property right immune from discontinuance or abandonment under regulations controlling nonconforming uses. Rather, the two cases suggest just the opposite. That is, one may secure a vested right to construct a nonconforming use, but there is no reason to afford that right different or greater protections than the ultimate use itself.

Our case law is similar. In *Eklund v. Clackamas County*, 36 Or App 73, 583 P2d 567 (1978), *overruled on other grounds by Forman v. Clatsop County,* 63 Or App 617, 665 P2d 365 (1983), *aff'd* 297 Or 129 (1984), we were asked to review a trial court determination that a developer had a vested right to build a subdivision, including a vested right to serve the subdivision from an existing community water system. Citing *Holmes*, we said that "allowance of a nonconforming use applies not only to a use in existence but also to uses which are in various stages of development at the time the ordinance is enacted." *Eklund*, 36 Or App at 81. We reviewed the facts under the criteria identified in *Holmes* for assessing evidence of a nonconforming use and concluded that the trial court was correct "in finding that petitioners had established a vested right to complete the project based on a nonconforming use." *Id.* at 82. In sum, while not equating vested rights with nonconforming use rights, we treated the two as inextricably related.

In *Milcrest Corp. v. Clackamas County*, 59 Or App 177, 650 P2d 963 (1982), a developer had sought approval of a planned unit development and had made expenditures and performed work toward completion of that project. The county's new comprehensive plan made the development nonconforming. We concluded that the developer had, as a result of its actions, "acquired a vested right *in* a nonconforming use." *Milcrest*, 59 Or App at 181 (emphasis added). We

also found, given the facts, that the developer did not abandon its right by applying for and obtaining approval of a revised planned unit development. Again, while not expressly so stating, we implicitly assumed that the "vested right" to complete the nonconforming planned unit development could be subject to loss by abandonment.[10]

In sum, Oregon case law does not square with petitioner's view that a vested right to proceed with development and completion of a nonconforming use is immune from the controls authorized under ORS 215.130. Rather, the available Oregon precedent strongly implies the contrary.

One final, practical consideration buttresses our conclusion that LUBA was correct in concluding that vested rights may be lost by abandonment or discontinuance. As LUBA observed:

> "We can conceive of no reason why a vested right should be treated more favorably than a nonconforming use with respect to the duration of that right or the requirement for diligent exercise. If petitioner's view were correct, the holder of a vested right is in a considerably more secure position than the holder of a nonconforming use, even though the latter may have invested far more capital to complete the use, and may have more to lose if that use is terminated. Further, under petitioner's view, the holder of a vested right can allow the land or structure to sit idle for an extended, perhaps unlimited, period of time, while the owner of a nonconforming use must employ the land or structure even under adverse economic conditions, to avoid loss of that right through discontinuance."

We agree with LUBA that there is no reason to afford the "inchoate" entitlement to a use greater protection from loss than the actual use would ultimately enjoy. We thus conclude that LUBA correctly determined that MCC 11.15.8805 applied to petitioner's claimed vested right to construct the cabin.

Notwithstanding that conclusion, a remand is required. In its second assignment of error, petitioner raises

---

[10] Like the Supreme Court's opinion in *Holmes*, our opinion in *Milcrest* does not refer to ORS 215.130.

a variety of challenges to LUBA's determination that the alleged vested right was lost through discontinuance. One of those arguments is essential to the balance of the analysis, and its ultimate disposition may either obviate or alter the remaining arguments.

■     As noted, the county, through incorporation of intervenor Rochlin's proposed material,[11] endorsed and ostensibly applied the proposition that a vested right can be lost through discontinuance unless the holder engages in "substantial effort[s] to finish the development" within the requisite period. *See* 176 Or App at 217. LUBA, in affirming—and, particularly, in performing its substantial evidence review—tested the evidence against that standard.

In doing so, however, LUBA does not appear to have addressed petitioner's threshold argument that the applicable standard, if any, is "ordinary care" and not "substantial efforts" to complete. MCC 11.15.8805(C) provides that a "non-conforming structure or use may be maintained with ordinary care." Conversely, neither ORS 215.130 nor MCC 11.15.8805 uses the term "substantial efforts." We do not understand LUBA to have explained why "ordinary care" is not the controlling standard or why—given the appropriate relationship between subsections (B) and (C)—"substantial efforts" can or should be the standard. Because that question is central to the inquiry, we remand to LUBA to, at a minimum, explain why "substantial efforts" and not "ordinary care" is the controlling standard for purposes of loss of a vested right pursuant to MCC 11.15.8805. Given that disposition, we decline, for prudential reasons, to address petitioner's remaining arguments in this posture.

We turn, briefly, to the county's conditional cross-petition. The county asserts that, if we, for any reason, reverse and remand to LUBA on the petition (as we are

---

[11] Petitioner challenges LUBA's determination that Rochlin's proposed findings, including the findings about "substantial effort," were incorporated into the county's final order. We are cited to nothing in the record to show petitioner objected to the incorporation of the findings before LUBA. Because the argument was not preserved for our review, we necessarily assume that the findings were properly before LUBA when it conducted its review.

doing), we should direct LUBA on remand to also enter findings on three matters that were not essential to its original analysis and disposition.[12]

We decline to so direct LUBA on remand. It may be that, depending on LUBA's assessment of the "ordinary care" versus "substantial efforts" question, LUBA might find it preferable or necessary to address one or more of the matters that the county has identified. Or it may be that those matters remain extraneous to LUBA's analysis and disposition. The choice is a prudential matter within LUBA's sound judgment, and we will not compel or constrain that judgment.

Reversed and remanded on petition for proceedings consistent with this opinion; affirmed on cross-petition.

---

[12] In particular, the county asserts an entitlement to findings on remand regarding its claims that: (1) "Petitioner failed to establish a vested right when, if the building permits issued in 1987 and 1991 were land use decisions, as claimed by the petitioner, those approvals expired before any zone change in 1993"; (2) "petitioner failed to establish a vested right because petitioner's predecessor expended the funds for the cabin in bad faith since they were expended to hide an illegal activity"; and (3) "petitioner abandoned its vested right by requesting and receiving a lot line adjustment in 1994 reducing the lot to 2.96 acres because any vesting that occurred was a right to a dwelling on a 38-acre parcel."