Argued and submitted April 10; on petition, reversed, on cross-petition, affirmed, June 14, 2023

CENTRAL OREGON LANDWATCH,
*Respondent*
*Cross-Petitioner,*

*v.*

DESCHUTES COUNTY,
*Respondent*
*Cross-Respondent,*

*and*

Michael GEMMET,
*Petitioner*
*Cross-Respondent.*

Land Use Board of Appeals
2022087; A180668

533 P3d 67

Petitioner Gemmet seeks judicial review of an order of the Land Use Board of Appeals (LUBA) that remanded to Deschutes County a declaratory ruling that a use had been "initiated" on the property acquired by Gemmet's company. Central Oregon LandWatch (COLW), on cross-petition, seeks judicial review of the same order, arguing that LUBA erred in dismissing COLW's challenge to the hearings officer's authority to consider Gemmet's application. *Held*: On the cross-petition, COLW did not preserve for review its proffered construction of the Deschutes County Code that a use is not "initiated" until it is formally determined by the county to be initiated, and LUBA did not err with respect to the argument raised by COLW at LUBA. On the petition, LUBA erred in remanding the hearings officer's decision, because the issue of whether the guest ranch use was abandoned sometime after the use was "initiated" was beyond the scope of the specific proceeding brought, and irrelevant to the initiation determination.

On petition, reversed; on cross-petition, affirmed.

Lisa Andrach argued the cause for petitioner-cross-respondent Michael Gemmet. Also on the briefs was Fitch & Neary, PC.

Carol Macbeth argued the cause and filed the brief for respondent-cross-petitioner Central Oregon LandWatch.

No appearance for respondent-cross-respondent Deschutes County.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

On petition, reversed; on cross-petition, affirmed.

**HELLMAN, J.**

Petitioner Gemmet seeks judicial review of an order of the Land Use Board of Appeals (LUBA) that remanded to Deschutes County a declaratory ruling that a use had been "initiated" on the property acquired by Gemmet's company. Central Oregon LandWatch (COLW), on cross-petition, seeks judicial review of the same order, arguing that LUBA erred in dismissing COLW's challenge to the hearings officer's authority to consider Gemmet's application. We review LUBA's order to determine if it is "unlawful in substance or procedure." ORS 197.850(9)(a). Addressing COLW's cross-petition first, we conclude that LUBA did not err with respect to the argument raised by COLW at LUBA. In addition, we do not address COLW's proffered construction of the Deschutes County Code (DCC) that COLW now urges us to adopt, because COLW did not preserve that issue below. Turning to Gemmet's petition, we agree with Gemmet that LUBA erred in remanding the hearings officer's decision, because the issue of whether the guest ranch use was abandoned sometime after the use was "initiated" was beyond the scope of the specific proceeding brought, and irrelevant to the initiation determination. Accordingly, we reverse on Gemmet's petition and affirm on COLW's cross-petition.

As background to understand the facts and LUBA's order, we start by setting out the applicable law. Under OAR 660-033-0140(1), a discretionary decision that approves a "proposed development on agricultural or forest land outside an urban growth boundary *** is void two years from the date of the final decision if the development action is not initiated in that period." Deschutes County has implemented that rule in DCC 22.36.010(B)(1), which provides that "a land use permit is void two years after the date the discretionary decision becomes final if the use approved in the permit is not initiated within that time period."[1] DCC 22.36.010(D)(1) provides that "[a] determination of whether

---

[1] Notably, DCC 22.36.010

"does not apply to *** [t]hose determinations made by declaratory ruling *** that involve a determination of the legal status of a property, land use or land use permit rather than whether a particular application for a specific land use meets the applicable standards of the zoning ordinance. Such

a land use has been initiated shall be processed as a declaratory ruling." With respect to determining whether a land use has been initiated, the DCC also provides:

> "Notwithstanding any condition to the contrary in an individual approval, a determination may be made for any land use approval described in DCC 22.36.010(B) \*\*\*, under DCC 22.36.010(D)(1) as to whether a use was 'initiated' within the duration of the land use approval. If it is determined that the use was 'initiated' during the life of the permit, the permit will be considered to be a valid existing permit and any land use described in the permit will be deemed to be authorized under the County's ordinances, subject to any applicable revocation provisions."

DCC 22.36.025(B). What must be shown for initiation of use under a permit is set out in DCC 22.36.020, the elements of which are not at issue in this judicial review.[2]

Finally, the code also sets out the declaratory ruling process under DCC 22.40. What types of determinations may be sought through the declaratory ruling process are limited, and include, among other things, "[d]etermining whether an approval has been initiated or considering the revocation of a previously issued land use permit, quasi-judicial plan amendment or zone change" and "[d]etermining the validity and scope of a nonconforming use." DCC 22.40.010(A)(3), (4). That provision also provides that "[i]n

---

determinations, whether favorable or not to the applicant or landowner, shall be final, unless appealed, and shall not be subject to any time limits."

DCC 22.36.010(A)(2)(a).

[2] DCC 22.36.020 provides:

"A.   For the purposes of DCC 22.36.020, development action undertaken under a land use approval described in DCC 22.36.010, has been 'initiated' if it is determined that:

"1.   The proposed use has lawfully occurred;

"2.   Substantial construction toward completion of the land use approval has taken place; or

"3.   Where construction is not required by the approval, the conditions of a permit or approval have been substantially exercised and any failure to fully comply with the conditions is not the fault of the applicant.

"B.   For the purposes of DCC 22.36.020, 'substantial construction' has occurred when the holder of a land use approval has physically altered the land or structure or changed the use thereof and such alteration or change is directed toward the completion and is sufficient in terms of time, labor or money spent to demonstrate a good faith effort to complete the development."

all cases, as part of making a determination or interpretation the Planning Director (where appropriate) or Hearings Body (where appropriate) shall have the authority to declare the rights and obligations of persons affected by the ruling." DCC 22.40.010(A). However, that authority is limited by DCC 22.40.010(B), (C), and (D), which provide:

"B.   A declaratory ruling shall be available only in instances involving a fact-specific controversy and to resolve and determine the particular rights and obligations of particular parties to the controversy. Declaratory proceedings shall not be used to grant an advisory opinion. Declaratory proceedings shall not be used as a substitute for seeking an amendment of general applicability to a legislative enactment.

"C.   Declaratory rulings shall not be used as a substitute for an appeal of a decision in a land use action or for a modification of an approval. In the case of a ruling on a land use action a declaratory ruling shall not be available until six months after a decision in the land use action is final.

"D.   The Planning Director may refuse to accept and the Hearings Officer may deny an application for a declaratory ruling if:

"1.   The Planning Director or Hearings Officer determines that the question presented can be decided in conjunction with approving or denying a pending land use action or if in the Planning Director or Hearings Officer's judgment the requested determination should be made as part of a decision on an application for a quasi-judicial plan amendment or zone change or a land use permit not yet filed; or

"2.   The Planning Director or Hearings Officer determines that there is an enforcement case pending in district or circuit court in which the same issue necessarily will be decided as to the applicant and the applicant failed to file the request for a declaratory ruling within two weeks after being cited or served with a complaint."

To obtain a declaratory ruling, the code requires that "[e]ach application for a declaratory ruling shall include the precise question on which a ruling is sought. The application shall set forth whatever facts are relevant

and necessary for making the determination and such other information as may be required by the Planning Division." DCC 22.40.020(B). Finally, as relevant here, DCC 22.40.040 provides that a declaratory ruling is conclusive, and an applicant cannot reapply for a ruling on the same question.

The facts about the land use approval at issue here are undisputed and were sufficiently set out by LUBA:

"The subject property is an approximately 155-acre tract of land located near the city of Sisters, with the Deschutes National Forest adjacent to the north, west, and southeast. The subject property is zoned Exclusive Farm Use-Sisters/ Cloverdale (EFU-SC).

"In 2002, the county approved a conditional use permit (CUP) for a guest ranch on the subject property. * * *

"The county approved a series of extensions of the CUP, with the last extension ending on June 26, 2007. Some of the infrastructure and cabins for the guest ranch were partially constructed pursuant to the extended CUP. As we understand it, development of the guest ranch under the CUP may have been discontinued between 2009 and 2021. Running Waters Properties of Oregon LLC (Running Waters) acquired the property in 2021. [Gemmet] is the agent, owner, and managing member of Running Waters. [Gemmet] submitted a county land use application in which they stated that they were seeking a 'Declaratory Ruling for an Initiation of Use.'"

(Footnotes and record citations omitted.)

The county hearings officer held a public hearing on Gemmet's application for an initiation of use and issued a declaratory ruling that the guest ranch had been "initiated." In making that determination, as relevant here, the hearings officer addressed two issues raised by opponents in that proceeding. The first issue related to COLW's argument that the county could not issue a declaratory ruling that the use had been initiated because the conditions in the CUP had not been fulfilled. The hearings officer determined that the arguments were outside the scope of the proceeding, stating:

"This action is a Declaratory Ruling limited to the scope of the question that is presented in the Application. This

Decision, by approving the Application, is not approving the Guest Ranch. Rather, the Decision is determining solely that the use already approved in the CUP Approval has been initiated. The approval of the Guest Ranch already occurred, and DCC 22.40.010(C) expressly prohibits using the Declaratory Ruling as an appeal of an earlier land use decision. \*\*\* To the extent there is any question about the permit holder's compliance with conditions of approval, the County has a separate enforcement process that can be used to adjudicate those issues. The question of use initiation can be determined whether or not the permit holder is in compliance with conditions of approval and, therefore, is not necessary to resolve in this proceeding."

The hearings officer also addressed arguments that the declaratory ruling of initiation could not issue because the guest ranch use had been abandoned:

"Testimony from multiple participants asserts that the Guest Ranch use has been 'abandoned' and, therefore, the Application must be denied. For similar reasons, COLW argues that the Application Notice and the Hearing Notice were deficient because they did not identify Code provisions relating to nonconforming uses. In support of these assertions, COLW cites to ORS 215.130(5) *et seq.*

"ORS 215.130(5), and the subsequent statutes referring to that statute, relate to nonconforming uses. Under that statute, a use that lawfully existed at the time of a land use regulation's enactment can lawfully continue even if it would no longer be allowed because of the new regulation. Such uses, however, can lose that nonconforming status if they are abandoned. That statute is not applicable here. The Applicant does not seek to continue a nonconforming use. Instead, the Applicant seeks only a determination that a conforming, conditional use was initiated within a certain time. It was therefore also not an error for the County to exclude nonconforming use criteria as part of its notices."

COLW appealed the hearings officer's decision to the board of county commissioners, which issued an order that it would not hear the appeal. Under DCC 22.32.035, the hearing officer's decision became the county's final decision.

COLW then petitioned LUBA for review. As relevant to our review, COLW first argued that Gemmet's CUP became void on the date of its expiration because proof of

initiation was not offered before the CUP expired. COLW asserted that the hearings officer was thus unable, as a matter of law, to determine that use was initiated under a void permit. COLW also argued that the hearings officer findings were inadequate and misconstrued the applicable law for Gemmet's declaratory ruling application with respect to nonconforming use. COLW argued that the guest ranch development ceased in 2009 and that the applicable regulations had changed, making the use as a guest ranch an abandoned nonconforming use, based on ORS 215.130(5) and (7) and DCC 18.120.010. Relying on *Fountain Village Development Co. v. Multnomah Cty.*, 176 Or App 213, 31 P3d 458 (2001), *rev den*, 334 Or 411 (2002) (*Fountain Village*), COLW asserted that the hearings officer erred in concluding that the nonconforming use statute was inapplicable because the inchoate right to resume the guest ranch use could be lost by abandonment unless Gemmet could demonstrate conformance with current land use regulations for guest ranches.

LUBA upheld the hearings officer's decision on the question of initiation. However, LUBA remanded to the county with instructions to consider COLW's arguments of nonconforming use and abandonment. Gemmet petitioned for review of LUBA's remand order and COLW cross-petitioned for review of LUBA's decision on initiation.

We address COLW's cross-petition first because a decision in COLW's favor on this issue would resolve this case. COLW argues that LUBA's ruling was unlawful in substance in its interpretation of OAR 660-033-0140(1) and DCC 22.36.020(A). In support of that assignment, COLW argues that a land use is not "initiated" under the DCC until the county has made a determination of initiation in a declaratory ruling. COLW presents us with a code construction argument that a development action was "initiated" only if there was a formal determination by the county that substantial construction or other actions listed in DCC 22.36.020(A)(1) to (3) had occurred and the qualifying actions alone were insufficient in the absence of that formal determination. Based on that construction of the code provision, COLW argues that Gemmet brought the declaratory

application too late, because a determination of initiation would have to have been made before the expiration of the CUP.

We reject that argument because it was not preserved below. Before LUBA, COLW argued only that Gemmet's CUP became void on the date of its expiration because proof of initiation was not offered before it expired. COLW did not present LUBA with the code construction argument that "initiation" means a formal determination of use, not any on-the-ground actions that occurred under a permit.

"Our rules and practice require a party to articulate a contention in a lower court or tribunal in order to assert on review that the court or tribunal erred in taking action inconsistent with that contention." *Willamette Oaks, LLC v. City of Eugene*, 248 Or App 212, 225, 273 P3d 219 (2012). That preservation requirement applies to review of LUBA orders. Indeed, "the statutory context of the LUBA review statutes lends particular force to the requirement of preservation of error before the board." *Id.* (citing *VanSpeybroeck v. Tillamook County*, 221 Or App 677, 690-91, 691 n 5, 191 P3d 712 (2008)). Mindful of the statutory framework that defines our review function of LUBA decisions, we decline to take up COLW's unpreserved construction of the DCC here, where the county was not given the opportunity to address the proposed construction and interpret its own code, and COLW has not provided us with any reason why we should consider its unpreserved argument. *See Gage v. City of Portland*, 133 Or App 346, 350, 891 P2d 1331 (1995) ("Although the task of interpretation in cases such as this is ours, we will not reverse a lower body's interpretation on grounds that that body was not given any required opportunity to consider.").

To the extent that COLW argues that LUBA failed to properly construe the DCC in addressing the argument that COLW did bring before LUBA, we reject that argument. As LUBA correctly concluded, neither OAR 660-033-0140(1) or the DCC require an application for declaration of an initiation of use to be brought before the land use approval expires. Moreover, both the OAR 660-033-0140(1) and DCC 22.36.010(B)(1) provide that a permit is void only

if the use has not been initiated. As a result, by operation of law, a land use approval is not void if the use has been initiated. DCC 22.36.025(B) explicitly so provides, stating a permit is a "valid existing permit" if "it is determined that the use was 'initiated' during the life of the permit." The DCC does not similarly require that the determination must be made during the life of the permit. As LUBA noted, based on the context of the DCC including DCC 22.36.025 and DCC 22.36.010(C)(1)(b), which contains a time limit for submitting an application to extend a CUP, "[t]he county clearly knows how to insert a time requirement into an application provision if it wishes to do so." LUBA's order was not unlawful in substance in rejecting COLW's assignment of error.

Turning to Gemmet's assignments of error in the petition, we briefly address and reject his second assignment of error first, in which he asserts that LUBA failed to defer to the county's interpretation of the DCC, as required by *Siporen v. City of Medford*, 349 Or 247, 243 P3d 776 (2010). We have long held that when a governing body declines to review a hearings officer's decision, the hearings officer's interpretation is not imputed to the governing body, such that it is due deference. *Gutoski v. Lane County*, 141 Or App 265, 268, 917 P2d 1048, *rev den*, 324 Or 18 (1996); *see also Gould v. Deschutes County*, 322 Or App 340, 350, 520 P3d 433 (2022) (distinguishing between a hearings officer's interpretation and a hearings officer's application of prior interpretation made by the board of county commissioners and holding that only the latter is due deference). Here, the county did not adopt the hearings officer's interpretation as its own when it declined to review the decision on COLW's appeal. As a result, "the hearings officer's interpretation is to be reviewed for whether it is correct as a matter of law." *Tonquin Holdings, LLC v. Clackamas County*, 247 Or App 719, 722-23, 270 P3d 397, *rev den*, 352 Or 170 (2012).

Finally, we turn to Gemmet's first assignment of error, which directly challenges LUBA's remand. Gemmet argues that, under the text and context of the applicable law, the declaratory ruling on initiation of use that he sought did not involve the nonconforming use standards, so the hearings officer correctly declined to consider COLW's arguments

on nonconforming use and abandonment. Therefore, he argues, LUBA's order remanding to the county to consider those arguments was unlawful in substance. We agree.

First, LUBA's decision was based on a mistaken factual premise. LUBA determined that the hearings officer may have decided that a finding that the guest ranch was initiated "necessarily means that the guest ranch may, subject to the conditions of approval, be constructed and operate on the subject property without any other limitations." Because of that purported ambiguity, LUBA determined that the hearings officer could have *sua sponte* expanded the scope of the hearing to such a degree that it was required to consider arguments on nonconforming use and abandonment.

LUBA incorrectly found an ambiguity in the hearings officer's ruling. The hearings officer repeatedly and explicitly recognized that the *only* question before it was whether the guest ranch use had been "initiated" during the lifetime of the CUP. And the hearings officer was clear the question of "initiated" was the *only* question it was deciding. Nothing in the hearings officer's decision suggested that the hearings officer believed that the decision would allow the guest ranch to be constructed and operate without regard to any code compliance issues that may exist. Indeed, such a ruling would conflict with DCC 22.36.025(B) which explicitly recognizes that even if "the use was 'initiated' during the life of the permit," further land use actions would be "subject to any applicable revocation provisions."

Relatedly, LUBA's analysis misunderstands the law as it applies here. A declaratory action is not an expansive proceeding that covers any and all issues related to a land use permit. Instead, it is narrowly confined to answering the "precise question" presented by the applicant. DCC 22.40.020(B); *see also* DCC 22.40.010(B) (stating that a declaratory ruling is "available only in instances involving a fact-specific controversy and to resolve and determine the *particular rights and obligations* of particular parties to the controversy" (emphasis added)). Further limiting the scope of the proceeding are the restrictions on who can seek a declaratory ruling and for what purposes. *See* DCC 22.40.020(A) (limiting the applicants to the owner of

property on questions of use of the property, to the holder of a permit on questions of interpretation of a quasi-judicial plan amendment, zoning change or land use permit, or the Planning Director). We also note that under DCC 22.40.040, the effect of a declaratory ruling is conclusive, binds the parties, and prevents the parties from reapplying for a ruling on the same question. The binding and preclusive nature of a declaratory ruling supports our conclusion that the county intended declaratory actions to have a limited scope.

In sum, those limits confirm that the hearings officer is not authorized to expand the scope of what is to be decided by declaratory ruling on a particular application beyond what the applicant has submitted. In this case, that was the question submitted by Gemmet on his application: "Declaratory Ruling for an Initiation of Use." Thus, although the hearings officer had authority to "declare the rights and obligations of persons affected by the ruling," DCC 22.40.010(A), that authority was not unlimited. It could only be exercised within the contours established by the county code, and under that code, by the "precise question" submitted by Gemmet.

The issues raised by COLW related to nonconforming use were not directed at initiation of use, which was Gemmet's "precise question." Instead, they focused on the lack of action on the part of the property owner *after* the initiation of the use. Those issues were thus outside the scope of the declaratory ruling application. LUBA's remand would therefore have the effect of requiring the hearings officer to decide a legal issue that was not before it, and which had not been noticed as part of the hearing. But the hearings officer cannot make advisory opinions or decide questions that are more appropriately addressed to a different procedure. *See* DCC 22.40.010(B), (C), (D).

LUBA's reliance on *Norvell v. Portland Area LGBC*, 43 Or App 849, 604 P2d 896 (1979), for the proposition that the hearings officer had to address the merits of COLW's arguments on nonconforming uses was also misplaced. Given the scope of Gemmet's "precise question," the nonconforming use standards do not inform whether a use had been initiated. For all of those reasons, the hearings officer

properly addressed the arguments raised on nonconforming use and abandonment when it correctly determined that they were not within the scope of the proceeding.

Finally, COLW's arguments based on *Fountain Village* are unpersuasive. We understand COLW to be arguing that, at most, Gemmet had an inchoate right to develop (if the use had been initiated) that is analogous to the common-law vested right discussed in *Fountain Village*. We further understand COLW to argue that that to confirm that kind of right Gemmet had to establish that the guest ranch use could be continued as a nonconforming use as provided in ORS 215.130(5) and (7) and DCC 18.120.010. *Fountain Village*, however, is not analogous to the initiation of use declaratory ruling that Gemmet sought because Gemmet's application did not involve a common-law property right.

The issue in *Fountain Village* was whether a landowner had a common-law vested right to complete construction of a log cabin on his property. 176 Or App at 215. A prior owner had started building the cabin when the zoning on the land allowed it as of right. Later, the zoning on the land had changed such that the cabin was a conditional use. The landowner bought the property under the new zoning and did not seek to resume construction of the cabin for a few years. *Id.* at 215-17. The county concluded that the landowner did not have a vested right to complete the cabin because it was a discontinued nonconforming use, explaining that a vested right is simply a right to complete a nonconforming use. *Id.* at 217. LUBA affirmed the county's decision, and the landowner petitioned for our review. We likewise concluded that common-law vested rights are, in effect, inchoate nonconforming uses. *Id.* at 221. As such, we concluded that the county had the authority to apply the discontinued nonconforming use ordinance to its determination of whether the landowner had a vested right to complete the cabin. *Id.* at 223.

We revisited our *Fountain Village* opinion in *Oregon Shores v. Board of County Commissioners*, 297 Or App 269, 441 P3d 647 (2019). That case involved landowners seeking a vested right determination under Measure 49 to continue developing a subdivision on their property. In addressing whether nonconforming use standards applied to that

determination, we explained the distinction between the common-law vested right at issue in *Fountain Village*, and the statutory right at issue in *Oregon Shores*. *Id.* at 276. A common-law vested right to develop is an equitable claim to an inchoate nonconforming use that requires showing a current vested right to develop at the time that the claim is made. *Id.* at 276, 279. The Measure 49 vested right, however, was a statutory right to a particular remedy that required showing a common-law vested right existed on the effective date of the act, December 6, 2007. *Id.* at 277-78. As a result, nothing that occurred after that date was relevant to the statutory determination, such as the alleged discontinuance of the nonconforming use in that case. *Id.* In addition, "[u]nlike the right at issue in *Fountain Village* \*\*\* a successful claim under section 5(3) [of Measure 49] yields not an inchoate nonconforming use under the common law but, rather, a development right expressly allowed by statute." *Id.* at 279.

The issue here is more analogous to *Oregon Shores* than *Fountain Village*. Gemmet is not seeking a determination of a common-law vested right, which we have said is an inchoate nonconforming use. He is seeking a declaratory ruling that the use allowed under the CUP was initiated during the lifetime of the permit, because, if it was, the CUP remains a valid, existing permit. That is not a right arising under the common law, nor is it "inchoate," because both the applicable state rule, OAR 660-033-0140(1), and the applicable DCC provisions provide that the CUP never was void if the use was initiated. That is, there was no formless or amorphous right that needed to be finalized or confirmed, the CUP, as a matter of law, continued as a valid, existing permit once the use was initiated during the lifetime of the permit. Also, like in *Oregon Shores*, here, the applicable DCC provisions place a date certain on which to make the initiation of use determination—during the lifetime of the permit—anything that occurred after that time was not relevant to that determination.[3] In sum, LUBA's remand was unlawful in substance, and we reverse it.

On petition, reversed; on cross-petition, affirmed.

---

[3] Because it is unnecessary to our disposition, we do not address Gemmet's additional arguments that LUBA's remand violates ORS 215.416(8)(a) and ORS 215.427(3).