Argued and submitted August 15, affirmed October 11, 2023

MANCHESTER SOLAR, LLC,
*Petitioner,*

*v.*

YAMHILL COUNTY,
*Respondent.*

Land Use Board of Appeals
2023016; A181678

538 P3d 223

Petitioner seeks judicial review of a Land Use Board of Appeals (LUBA) order that affirmed the county's determination that petitioner did not have a vested right to complete its solar project under OAR 660-003-0140 as implemented in Yamhill County Zoning Ordinance 402.08(A). LUBA concluded that, when subsections (1) and (2) of the rule are read together, petitioner was required to obtain an extension of its conditional use permit within the initial two-year authorization period to continue developing its solar farm project, even if petitioner had initiated development action within the meaning of subsection (1). Petitioner assigns error to LUBA's construction of the administrative rule and to LUBA's decision not to address whether petitioner had a vested right to continue developing its solar farm under the common law. *Held:* Subsections (1) and (2) of the rule must be read in context with one another. When read together, the rule requires a permittee to timely obtain an extension of its permit to continue any development the permittee initiated during the permit period. Accordingly, petitioner's permit expired after petitioner did not timely request an extension. The Court of Appeals did not reach petitioner's common-law vested rights argument because the issue was not presented to the county; therefore, LUBA did not err in declining to address the argument.

Affirmed.

Peter Livingston argued the cause for petitioner. On the brief were Brian R. Talcott, Damien R. Hall, and Dun Carney Allen Higgins & Tongue LLP.

Jodi Gollehon argued the cause and filed the brief for respondent.

Before Lagesen, Chief Judge, and Hellman, Judge, and Armstrong, Senior Judge.

LAGESEN, C. J.

Affirmed.

**LAGESEN, C. J.**

Petitioner Manchester Solar seeks judicial review of an order of the Land Use Board of Appeals (LUBA). In that order, LUBA affirmed respondent Yamhill County's interpretation of Yamhill County Zoning Ordinance (YCZO) 402.08(A), which implements and adopts OAR 660-003-0140(1), a rule promulgated by the Land Conservation and Development Commission (LCDC). Specifically, LUBA affirmed the county's conclusion that the ordinance required petitioner to obtain an extension of its conditional use permit (CUP) to continue developing its solar farm project; LUBA rejected petitioner's contrary argument that an extension was not required if petitioner had initiated development action within the meaning of the ordinance before the expiration of the permit period. We review LUBA's order to determine if it is "unlawful in substance or procedure," ORS 197.850(9)(a), and conclude that it is not unlawful. Accordingly, we affirm.

We begin by outlining the applicable law to provide context for the dispute before us. OAR 660-033-0140(1) is an administrative rule promulgated by LCDC. It governs the expiration of discretionary permits, like petitioner's CUP here, for development on agricultural land. Yamhill County has implemented the administrative rule nearly verbatim through its county ordinance, YCZO 402.08(A); the ordinance differs slightly from the rule, but those differences are not relevant to this matter. Because, in this context, we treat a county ordinance that echoes an LCDC rule as one and the same, our references to the rule throughout this opinion are a shorthand reference to the rule and the ordinance. *See Forster v. Polk County*, 115 Or App 475, 478, 839 P2d 241 (1992) (explaining that, where a county ordinance is materially the same as an LCDC rule, this court treats the rule and the ordinance as if they were the same).

OAR 660-033-0140(1) provides that "a discretionary decision * * * approving a proposed development on agricultural or forest land outside an urban growth boundary * * * is void two years from the date of the final decision if the development action is not initiated in that period." *See also* YCZO 402.08(A) (providing the same expiration period

for discretionary permits for development in the Exclusive Farm Use district). The rule allows a county to extend a permit for 12 months if the permittee "makes a written request for an extension" to the county before the end of the two-year period. OAR 660-033-0140(2)(a) - (b); YCZO 402.08(A)(1). In that request, the permittee must state the "reasons that prevented the applicant from beginning or continuing development within the approval period." OAR 660-033-0140(2)(c); YCZO 402.08(A)(1). Before granting an extension request, the county must determine that the permittee "was unable to begin or continue development during the approval period for reasons for which the applicant was not responsible." OAR 660-033-0140(2)(d); YCZO 402.08(A)(2).

The relevant facts are not in dispute. On November 29, 2018, the county issued petitioner a CUP to develop a 10-acre photovoltaic solar power generating facility on land zoned for Exclusive Farm Use (EFU). The CUP was subject to OAR 660-033-0140(1) and YCZO 402.08(A)'s validity period and had an expiration date of November 29, 2020. Petitioner requested, and the county granted, a one-year extension of the CUP to December 14, 2021.

That date came and went without petitioner completing the use authorized under the CUP. Then, on January 5, 2022, petitioner requested a second extension of its CUP. The county denied the second request because petitioner did not request it before the extended expiration date. Petitioner sought review of the county's denial of its second extension request before the Yamhill County Board of Commissioners, which declined to review. Petitioner then appealed the county's denial of the extension request to LUBA. LUBA remanded to the county at the parties' request. Petitioner asked the county to limit the scope of the remand proceedings to two questions, only one of which is pertinent to our review:[1] whether petitioner had a vested the right to complete development of its solar facility project under YCZO 402.08(A), the equivalent of OAR 660-033-0140(1).

_____

[1] The second question presented by petitioner was whether "the CUP's construction blackout time period" should "be excluded from the substantial completion deadline required under YCZO 1202.05(D)." The "blackout time period" refers to a condition on petitioner's CUP prohibiting constructing activities from November through February.

The county held a hearing. At that hearing, petitioner introduced evidence of its expenses related to the solar facility project. Petitioner argued that its expenses demonstrated that petitioner had initiated development action under OAR 660-033-0140(1), something that, in petitioner's view, gave it a vested right under the rule to continue its development. The county assumed without deciding that petitioner's reported expenses constituted "initiating" "development action." It then concluded that OAR 660-033-0140(1) does not render petitioner's CUP "valid indefinitely simply by initiating a development action before the permit's expiration date." The county read OAR 660-033-0140(2) as a limitation on the first subpart in that it "makes clear that a permit extension may be required to 'continue development' after expiration of the [authorized] period, even if the development action was begun or 'initiated' within" the authorized period. The county also, on its own initiative, analyzed whether petitioner had a common law vested right to continue development of its solar project and concluded that it did not.

Petitioner appealed to LUBA and assigned error to the county's determination that it did not have a vested right to continue development under the CUP; petitioner contended that the county's decision erroneously construed the rule to require an extension, notwithstanding the fact that petitioner, in its view, had initiated development action. Petitioner argued that its CUP did not expire or become void because it initiated development action before December 14, 2021, and therefore had a vested right under the county ordinance to complete its solar project without the need for extensions. Petitioner also argued that the county's common law vested-rights analysis was incorrect, and that the county did not adopt sufficient findings by substantial evidence to support the conclusion that petitioner did not have a common law vested right in the CUP.

LUBA affirmed. LUBA determined that the county properly construed the rule as implemented in the ordinance. Relying on its decision in *Landwatch Lane County v. Lane County*, 74 Or LUBA 299 (2016), LUBA concluded that the county's decision rested on a correct interpretation

of the rule. As to the county's common-law vesting analysis, LUBA concluded that that analysis was in addition to, and independent from, the county's vesting analysis under the ordinance and thus provided no basis for remand. Petitioner petitioned this court for review of LUBA's decision.

We review LUBA's order to determine whether it is unlawful in substance or procedure. ORS 197.850(9)(a). A LUBA order is unlawful in substance if it represents a "mistaken interpretation of the applicable law." *Schaefer v. Marion County*, 318 Or App 617, 620, 509 P3d 718 (2022) (quoting *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001)). As noted earlier, because the LCDC rule and the county's provisions are "materially the same in substance," we treat the ordinance as if it were the rule. *Forster*, 115 Or App at 478. That also means that we do not defer to the county's interpretation of its ordinance, as we do when reviewing a county's interpretation of a land use ordinance that is not materially identical to an LCDC rule. *Gilmour v. Linn County*, 279 Or App 584, 589, 379 P3d 833 (2016).

When we interpret an administrative rule, absent a controlling interpretation by the rule's authoring agency, "we apply the same analytical framework that applies to the construction of statutes." *Schaefer v. Marion County*, 323 Or App 390, 400, 523 P3d 1142 (2022). That means that we "'seek to divine the intent of the rule's drafters' by considering 'the text of the rule in its regulatory and statutory context.'" *Id*. at 400-01 (quoting *Noble v. Dept. of Fish and Wildlife*, 355 Or 435, 448, 326 P3d 589 (2014)). "The text of a rule 'is the starting point for interpretation and is the best evidence of the [enacting body's] intent.'" *Schaefer*, 323 Or App at 401 (quoting *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (brackets in original)).

In its first assignment of error, petitioner contends that LUBA erred when it concluded that OAR 660-033-0140(1) required petitioner to timely seek and obtain extensions of its CUP regardless of whether petitioner had initiated its development action. As mentioned, LUBA relied on *Landwatch Lane County* for its conclusion. While LUBA's

opinions are not binding authority on this court, its decisions are relevant for persuasive value. *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 251-52, 264 P3d 1265 (2011). Because we find its reasoning persuasive, we set forth the reasoning in *Landwatch Lane County*, and explain why we are convinced that it represents the proper interpretation of the rule.

In *Landwatch Lane County*, Lane County granted a discretionary permit to a developer in 2005 to construct a private school with three buildings on EFU land. 74 Or LUBA at 301. In 2006, the developer applied for a building permit for one building, obtained it in 2007, and completed its construction in 2008. *Id*. at 302. Also in 2008, the developer applied for a building permit for a second building and received it in 2009. *Id*. Due to a nationwide economic recession, the developer reduced its operations and did not seek a permit for its third building until 2014. *Id*. at 302-03.

The Lane County Board of Commissioners approved the permit in 2016. 74 Or LUBA at 304. The county interpreted OAR 660-033-0140(1) to mean that "once development action is 'initiated' within the two-year period, the discretionary permit never expires and there is no need for" the permittee to obtain extensions to continue and complete its project. *Id*. The county decided that the school developer "initiated" development action by applying for a construction permit for its first building within the validity period in 2006 and thus the permit to complete the entire school project would never expire and the developer would not need to apply for extensions. *Id*. at 304.

LUBA reversed. LUBA concluded that OAR 660-033-0140(1) must be read in context with OAR 660-033-0140(2). 74 Or LUBA at 307. LUBA reasoned that, "[i]f initiation of the development action within the two-year period is sufficient in itself to authorize continued development after expiration of the two-year period, then the 'continue development' element of OAR 660-033-0140(2) is meaningless language." *Id*. at 307. Had LCDC intended for OAR 660-033-0140(1) to allow a discretionary permit to be valid indefinitely without the need for extensions, LUBA reasoned, it would not have included the text in OAR 660-033-0140(2)(d)

requiring a permittee to "demonstrate that it was unable to 'continue development during the approval period.'" *Id.*

We find that reasoning persuasive under the analytic framework that governs our interpretation of the LCDC rule. To date, LCDC has not provided a controlling interpretation of OAR 660-033-0140, so we begin our analysis of OAR 660-033-0140 by looking to the text to discern LCDC's intent. *Schaefer*, 323 Or App at 401. The first subsection of the rule states that a discretionary permit "is void two years from the date of the final decision if the development action is not initiated in that period." OAR 660-033-0140(1). The rule then states that a county can extend the two-year period if certain criteria are met. OAR 660-033-0140(2). The permittee must submit its extension request "prior to the expiration of the" approval period and must "state[] the reasons that prevented the applicant from beginning or continuing development within the approval period." OAR 660-033-0140(2)(b) - (c).

We recognize that OAR 660-033-0140(1) is ambiguous. Taken in isolation, the phrase "void two years from the date of the final decision if the development action is not initiated" might plausibly be read as petitioner argues it should be: to signal that the converse is also true—that a permit is valid indefinitely without the need for extensions when the permittee does initiate development action within the permit period. But the text can also reasonably be understood a different way. It can be read to be silent as to what a permittee who initiates, but does not complete, development action within the permit period must do to ensure that the CUP remains valid. In other words, LCDC's decision to specify that the failure to initiate development action within the permit period will void the permit does not equate unambiguously to the conclusion that LCDC intended that initiation of development action, standing alone, would render a permit valid in perpetuity, absent any further action by the permittee.

As was LUBA, we are persuaded by the context of the rule that petitioner's interpretation of OAR 660-033-0149(1) is incorrect and that, in view of OAR 660-033-0140(2), petitioner was required to obtain a permit extension

to continue development of the use approved under the CUP. *See Sky Lakes Medical Center v. Dept. of Human Services*, 310 Or App 138, 149, 484 P3d 1107 (2021) ("'[C]ontext' includes, among other things, other parts of the statute at issue.") (quoting *Force v. Dept. of Rev.*, 350 Or 179, 188, 252 P3d 306 (2011)); *see also PGE*, 317 Or at 611 ("the court considers the context of the statutory provisions at issue, which includes other provisions of the same statute").

Specifically, OAR 660-033-0140(2) provides that a "county may grant one extension period of up to 12 months" if the permittee, "makes a written request for an extension * * * prior to the expiration of the approval period" that "states the reasons that prevented the [permittee] from beginning or continuing development within the approval period." OAR 660-033-0140(2)(a) - (c). As noted, OAR 660-033-0140(1) provides for a two-year approval period, stating that discretionary permits are "void two years from the date of [issuance] if the development action is not initiated in that period." Subsection (2) of the rule then spells out the process a permittee must follow for a county to consider extending a permit's validity period to allow a developer to "continue development" beyond the two-year period provided in subsection (1). When the subsections are read together, subsection (2) contemplates that, even when development is ongoing under subsection (1) at the time a permit is set to expire, the ongoing validity of the permit is predicated on a permittee demonstrating an entitlement to an extension.

That context signals that simply initiating development action within the two-year approval period in OAR 660-033-0140(1) is not enough to render a permit valid indefinitely. The "continue development" phrase in OAR 660-033-0140(2) limits a permittee's ability to move forward with its development project even when development action is initiated by requiring permittees to provide justification to extend their permit past the approval period. Petitioner's proffered reading of the rule would have us exclude LCDC's reference to a permittee's need for extensions in OAR 660-033-0140(2) to continue development. It is not our role to "omit what has been inserted" into the rule. ORS 174.010; *SAIF v. Donahue-Birran*, 195 Or App 173, 177, 96 P3d 1282

(2004) (applying ORS 174.010 to construction of administrative rules). Accordingly, we conclude that OAR 660-033-0140 requires a permittee to obtain an extension of their permit to continue any development that the permittee initiated during the permit period.

LUBA and the county thus were correct to conclude that petitioner's CUP expired, and that OAR 660-033-040(1) did not give petitioner a vested right to continue development. Petitioner's approval period expired on December 14, 2021, and it submitted its extension request on January 5, 2022. Even assuming that petitioner initiated the development action within the meaning of OAR 660-033-040(1) before December 14, 2021, it is undisputed that any development action was ongoing on that date, and also undisputed that petitioner did not timely submit an extension request before its CUP expired. Because petitioner did not do so, its 2018 CUP expired.

Arguing for a different result, petitioner asserts that we can give effect to the "continue development" wording while at the same time adopting petitioner's view that initiating development action means that a permittee obtains a vested right to continue development. Petitioner asserts that it would be possible for a permittee to start development but still fall short of initiating development action. Petitioner posits that those circumstances are ones in which an extension is required. We do not find that argument persuasive because nothing in the text of the rule suggests different gradations of starting or initiating development action. Beyond that, we think the most natural reading of the provision allowing for an extension to continue development beyond the approval period is that an extension is required to continue whatever development has begun during the approval period.

Petitioner also points to our recent decision in *Central Oregon Landwatch v. Deschutes County*, 326 Or App 439, 533 P3d 67 (2023), asserting that it demonstrates that petitioner's interpretation of the rule is correct. In *Central Oregon Landwatch*, we examined Deschutes County Code (DCC) 22.36.010(B)(1), which is Deschutes County's implementation of OAR 660-033-0140(1). *Id*. at 447-48. We held

that, under Deschutes County's implementation of the administrative rule, "a land use approval is not void if the use has been initiated." *Id*. at 448. In essence, we concluded, much as petitioner argues here, that initiating development action effectively vests in a permittee the right to continue to develop the use. *Id*.

At first blush, petitioner's argument has some force. Like YCZO 402.08(A)(1) (and the LCDC rule), the DCC provides that "a land use permit is void two years after the date the discretionary decision becomes final if the use approved in the permit is not initiated within that time period." *Central Oregon Landwatch*, 326 Or App at 441 (quoting DCC 22.36.010(B)(1)). Unlike Yamhill County's ordinance and the LCDC rule, however, the DCC spells out a specific process for determining whether development action has been initiated for purposes of the code and also specifically states that, by initiating development action during the approval period, a permittee gains a vested right to continue an approved land use. In particular, the DCC provides that Deschutes County shall determine whether an approved land use has been initiated through a declaratory ruling and provides elements for Deschutes County to make that determination. *Id*. at 441-42. Further, and critically, unlike Yamhill County's ordinance and the LCDC rule, the DCC expressly states: "If it is determined that the use was 'initiated' during the life of the permit, the permit will be considered to be a valid existing permit and any land use described in the permit will be deemed to be authorized[.]" DCC 22.36.025(B). In *Central Oregon Landwatch*, we relied on that wording to hold that, in Deschutes County, "a land use approval is not void if the use has been initiated." *Central Oregon Landwatch*, 355 Or App at 448. By contrast, no part of YCZO 402.08(A) or the Yamhill County Zoning Ordinances provide that the initiation of development action, standing alone, means that the permit remains valid. Because *Central Oregon Landwatch* turned largely on specific provisions of the Deschutes County Code that are not replicated in either the LCDC ordinance or the Yamhill County Code, we are not persuaded that it stands for the proposition that petitioner's CUP remains valid, notwithstanding petitioner's failure to extend the expiration date of the CUP.

In its second assignment of error, petitioner contends that LUBA's decision not to address whether petitioner had a vested right to continue developing its solar farm under the common law was unlawful in substance or procedure under ORS 197.850(9)(a).

LUBA declined to address the county's common-law vesting discussion because it concluded that it was in addition to and independent from the county's interpretation and application of the administrative rule and thus provided no basis for remand. Having reviewed the county's decision, we agree with LUBA's assessment; the county's common-law vesting analysis was collateral to the issue before the county. Under those circumstances, we have no basis for concluding that LUBA erred in declining to address the county's common-law vesting analysis.[2]

Affirmed.

---

[2] Our conclusion that the county's common-law vesting analysis was collateral to the question of whether petitioner had a vested right to continue development under the terms of the rule necessarily means that the law-of-the-case doctrine will not preclude petitioner from challenging that analysis, should petitioner seek a determination that petitioner has a common-law vested right to continue development, as distinct from a right under the terms of the rule. As the county's lawyer explained at oral argument, the way for petitioner to obtain a ruling on the common-law vesting issue is to expressly request a common-law vesting determination under the applicable county guidance. In this proceeding, petitioner did not seek a common-law vesting determination but, instead, sought only a determination whether the LCDC rule, as implemented by the county ordinance, applied to give petitioner a vested right in continuing development under the circumstance of this case. Consistent with the limited scope of the proceeding, petitioner affirmatively argued to the county that it should *not* consider the common-law vesting analysis in answering the rule/ordinance-based question before it.